# EXHIBIT Q



US008250357B2

(12) **United States Patent**  (10) **Patent No.:** **US 8,250,357 B2**
Sun et al.  (45) **Date of Patent:** **Aug. 21, 2012**

(54) **TUNNEL INTERFACE FOR SECURING TRAFFIC OVER A NETWORK**

(75) Inventors: **Chih-Tang Sun**, San Jose, CA (US);
**Kiho Yum**, Sunnyvale, CA (US);
**Abraham R. Matthews**, San Jose, CA
(US)

(73) Assignee: **Fortinet, Inc.**, Sunnyvale, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 2658 days.

(21) Appl. No.: **09/952,520**

(22) Filed: **Sep. 13, 2001**

(65) **Prior Publication Data**

US 2002/0152373 A1    Oct. 17, 2002

**Related U.S. Application Data**

(60) Provisional application No. 60/232,516, filed on Sep.
14, 2000, provisional application No. 60/232,577,
filed on Sep. 13, 2000.

(51) **Int. Cl.**
*H04L 29/06* (2006.01)
(52) **U.S. Cl.** ............... 713/153; 726/14; 726/15; 726/16
(58) **Field of Classification Search** ................. 713/153,
713/201, 150; 380/49; 726/14–16
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,667,287 A | 5/1987 | Allen et al. | |
| 5,400,331 A | 3/1995 | Lucak et al. | |
| 5,442,708 A * | 8/1995 | Adams et al. | ................. 713/153 |
| 5,473,599 A | 12/1995 | Li et al. | |
| 5,490,252 A | 2/1996 | Macera et al. | |
| 5,550,816 A | 8/1996 | Hardwick et al. | |
| 5,581,705 A | 12/1996 | Passint et al. | |
| 5,606,668 A | 2/1997 | Shwed | |
| 5,633,866 A | 5/1997 | Callon | |
| 5,745,778 A | 4/1998 | Alfieri | |

(Continued)

FOREIGN PATENT DOCUMENTS

WO          0051290      8/2000

(Continued)

OTHER PUBLICATIONS

Lawrence J. Lang, James Watson; "Connecting Remote FDDI Instal-
lations with Single-Mode Fiber, Dedicated Lines, or SMDS"; Jul.
1990; ACM Press; ACM SIGCOMM Computer Communication
Review, vol. 20, Issue 3; pp. 72-82.*

(Continued)

*Primary Examiner* — Carl Colin
*Assistant Examiner* — Chau Le
(74) *Attorney, Agent, or Firm* — Hamilton, DeSanctis & Cha
LLP

(57) **ABSTRACT**

A flexible, scalable hardware and software platform that
allows a service provider to easily provide internet services,
virtual private network services, firewall services, etc., to a
plurality of customers. One aspect provides a method and
system for delivering security services. This includes con-
necting a plurality of processors in a ring configuration within
a first processing system, establishing a secure connection
between the processors in the ring configuration across an
internet protocol (IP) connection to a second processing sys-
tem to form a tunnel, and providing both router services and
host services for a customer using the plurality of processors
in the ring configuration and using the second processing
system. A secure communications tunnel is formed by routing
all packets for the tunnel through an encrypting router at the
sending end to obtain encrypted packets, and routing the
encrypted packets through a decrypting router at the receiving
end of an IP connection.

**7 Claims, 15 Drawing Sheets**



**US 8,250,357 B2**

Page 2

---

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,812,779 A | 9/1998 | Ciscon et al. | |
| 5,825,772 A | 10/1998 | Dobbins et al. | |
| 5,825,891 A * | 10/1998 | Levesque et al. | 713/153 |
| 5,835,726 A | 11/1998 | Shwed et al. | |
| 5,841,973 A | 11/1998 | Kessler et al. | |
| 5,875,290 A | 2/1999 | Bartfai et al. | |
| 5,963,555 A | 10/1999 | Takase et al. | |
| 5,964,847 A | 10/1999 | Booth et al. | |
| 5,987,521 A | 11/1999 | Arrowood et al. | |
| 6,014,382 A | 1/2000 | Takihiro et al. | |
| 6,032,193 A | 2/2000 | Sullivan | |
| 6,047,330 A | 4/2000 | Stracke | |
| 6,069,895 A | 5/2000 | Ayandeh | |
| 6,085,238 A | 7/2000 | Yuasa et al. | |
| 6,098,110 A | 8/2000 | Witkowski et al. | |
| 6,118,791 A | 9/2000 | Fichou et al. | |
| 6,137,777 A | 10/2000 | Vaid et al. | |
| 6,147,976 A | 11/2000 | Shand et al. | |
| 6,169,739 B1 | 1/2001 | Isoyama | |
| 6,169,793 B1 | 1/2001 | Godwin et al. | |
| 6,173,333 B1 | 1/2001 | Jolitz et al. | |
| 6,173,399 B1 * | 1/2001 | Gilbrech | 713/153 |
| 6,175,867 B1 | 1/2001 | Taghadoss | |
| 6,192,051 B1 | 2/2001 | Lipman et al. | |
| 6,220,768 B1 | 4/2001 | Barroux | |
| 6,226,788 B1 | 5/2001 | Schoening et al. | |
| 6,243,580 B1 | 6/2001 | Garner | |
| 6,249,519 B1 | 6/2001 | Rangachar | |
| 6,260,072 B1 | 7/2001 | Rodriguez | |
| 6,260,073 B1 | 7/2001 | Walker et al. | |
| 6,278,708 B1 | 8/2001 | Von Hammerstein et al. | |
| 6,286,038 B1 | 9/2001 | Reichmeyer et al. | |
| 6,295,297 B1 | 9/2001 | Lee | |
| 6,298,130 B1 | 10/2001 | Galvin | |
| 6,304,975 B1 | 10/2001 | Shipley | |
| 6,320,859 B1 | 11/2001 | Momirov | |
| 6,330,602 B1 | 12/2001 | Law et al. | |
| 6,338,092 B1 | 1/2002 | Chao et al. | |
| 6,381,644 B2 | 4/2002 | Munguia et al. | |
| 6,405,262 B1 | 6/2002 | Vogel et al. | |
| 6,414,595 B1 | 7/2002 | Scrandis et al. | |
| 6,434,619 B1 | 8/2002 | Lim et al. | |
| 6,438,612 B1 | 8/2002 | Ylonen et al. | |
| 6,449,650 B1 | 9/2002 | Westfall et al. | |
| 6,453,406 B1 | 9/2002 | Sarnikowski et al. | |
| 6,459,682 B1 | 10/2002 | Ellesson et al. | |
| 6,463,061 B1 | 10/2002 | Rekhter et al. | |
| 6,466,976 B1 | 10/2002 | Alles et al. | |
| 6,496,935 B1 | 12/2002 | Fink et al. | |
| 6,532,088 B1 | 3/2003 | Dantu | |
| 6,542,466 B1 | 4/2003 | Pashtan et al. | |
| 6,549,954 B1 | 4/2003 | Lambrecht et al. | |
| 6,553,423 B1 | 4/2003 | Chen | |
| 6,556,544 B1 | 4/2003 | Lee | |
| 6,606,315 B1 | 8/2003 | Albert et al. | |
| 6,608,816 B1 | 8/2003 | Nichols | |
| 6,609,153 B1 | 8/2003 | Salkewicz | |
| 6,631,519 B1 | 10/2003 | Nicholson et al. | |
| 6,633,571 B1 * | 10/2003 | Sakamoto et al. | 370/401 |
| 6,636,516 B1 | 10/2003 | Yamano | |
| 6,639,897 B1 | 10/2003 | Shiomoto et al. | |
| 6,640,248 B1 * | 10/2003 | Jorgensen | 709/226 |
| 6,658,013 B1 | 12/2003 | de Boer et al. | |
| 6,668,282 B1 | 12/2003 | Booth et al. | |
| 6,674,756 B1 | 1/2004 | Rao et al. | |
| 6,680,922 B1 * | 1/2004 | Jorgensen | 370/328 |
| 6,687,220 B1 | 2/2004 | Ayres | |
| 6,694,437 B1 * | 2/2004 | Pao et al. | 726/15 |
| 6,697,359 B1 | 2/2004 | George | |
| 6,697,360 B1 | 2/2004 | Gai et al. | |
| 6,732,314 B1 * | 5/2004 | Borella et al. | 714/752 |
| 6,738,371 B1 | 5/2004 | Ayres | |
| 6,738,821 B1 | 5/2004 | Wilson et al. | |
| 6,775,267 B1 | 8/2004 | Kung et al. | |
| 6,775,284 B1 | 8/2004 | Calvignac et al. | |
| 6,778,502 B2 | 8/2004 | Ricciulli | |
| 6,816,462 B1 | 11/2004 | Booth et al. | |
| 6,856,676 B1 | 2/2005 | Pirot et al. | |
| 6,868,082 B1 | 3/2005 | Allen et al. | |
| 6,883,170 B1 | 4/2005 | Garcia | |
| 6,894,994 B1 | 5/2005 | Grob et al. | |
| 6,901,517 B1 | 5/2005 | Redmore | |
| 6,907,039 B2 | 6/2005 | Shen | |
| 6,922,774 B2 * | 7/2005 | Meushaw et al. | 713/151 |
| 6,938,095 B2 | 8/2005 | Basturk et al. | |
| 6,938,097 B1 | 8/2005 | Vincent et al. | |
| 6,944,128 B2 | 9/2005 | Nichols | |
| 6,944,168 B2 | 9/2005 | Paatela et al. | |
| 6,954,429 B2 | 10/2005 | Horton et al. | |
| 6,982,984 B1 * | 1/2006 | Asayesh et al. | 370/401 |
| 6,985,438 B1 | 1/2006 | Tschudin | |
| 6,990,103 B1 | 1/2006 | Gollamundi | |
| 6,999,454 B1 | 2/2006 | Crump | |
| 7,020,143 B2 | 3/2006 | Zdan | |
| 7,028,333 B2 * | 4/2006 | Tuomenoksa et al. | 726/3 |
| 7,039,053 B1 | 5/2006 | Freed et al. | |
| 7,042,843 B2 | 5/2006 | Ni | |
| 7,042,848 B2 | 5/2006 | Santiago et al. | |
| 7,082,477 B1 * | 7/2006 | Sadhasivam et al. | 709/246 |
| 7,096,383 B2 | 8/2006 | Talaugon | |
| 7,096,495 B1 | 8/2006 | Warrier et al. | |
| 7,111,072 B1 | 9/2006 | Matthews | |
| 7,116,665 B2 | 10/2006 | Balay | |
| 7,159,031 B1 * | 1/2007 | Larkin et al. | 709/238 |
| 7,161,904 B2 | 1/2007 | Hussain | |
| 7,181,766 B2 * | 2/2007 | Bendinelli et al. | 726/15 |
| 7,203,192 B2 | 4/2007 | Desai | |
| 7,221,945 B2 | 5/2007 | Milford et al. | |
| 7,225,259 B2 * | 5/2007 | Ho et al. | 709/227 |
| 7,316,029 B1 | 1/2008 | Parker et al. | |
| 7,324,889 B2 | 1/2008 | Arai et al. | |
| 7,376,827 B1 * | 5/2008 | Jiao | 713/153 |
| 2001/0028636 A1 | 10/2001 | Skog et al. | |
| 2001/0043571 A1 * | 11/2001 | Jang et al. | 370/260 |
| 2001/0048661 A1 | 12/2001 | Clear et al. | |
| 2001/0052013 A1 | 12/2001 | Munguia et al. | |
| 2002/0049902 A1 * | 4/2002 | Rhodes | 713/153 |
| 2002/0062344 A1 * | 5/2002 | Ylonen et al. | 709/204 |
| 2002/0066034 A1 | 5/2002 | Schlossberg et al. | |
| 2002/0075901 A1 | 6/2002 | Perlmutter et al. | |
| 2002/0097672 A1 | 7/2002 | Barbas et al. | |
| 2002/0099849 A1 | 7/2002 | Alfieri et al. | |
| 2002/0126672 A1 | 9/2002 | Chow et al. | |
| 2002/0152373 A1 | 10/2002 | Sun et al. | |
| 2002/0186661 A1 | 12/2002 | Santiago et al. | |
| 2002/0188657 A1 | 12/2002 | Traversat et al. | |
| 2002/0191604 A1 | 12/2002 | Mitchell et al. | |
| 2003/0033401 A1 * | 2/2003 | Poisson et al. | 709/224 |
| 2003/0043792 A1 | 3/2003 | Carpini et al. | |
| 2003/0081559 A1 | 5/2003 | Matuoka et al. | |
| 2003/0091021 A1 | 5/2003 | Trossen et al. | |
| 2003/0108041 A1 | 6/2003 | Aysan | |
| 2003/0115308 A1 | 6/2003 | Best et al. | |
| 2003/0117954 A1 | 6/2003 | De Neve et al. | |
| 2003/0131228 A1 | 7/2003 | Twomey | |
| 2003/0169747 A1 | 9/2003 | Wang | |
| 2003/0185226 A1 | 10/2003 | Tang et al. | |
| 2003/0200295 A1 | 10/2003 | Roberts et al. | |
| 2003/0212735 A1 | 11/2003 | Hickok et al. | |
| 2003/0223406 A1 | 12/2003 | Balay | |
| 2003/0223418 A1 | 12/2003 | Desai et al. | |
| 2003/0223456 A1 | 12/2003 | DiMambro | |
| 2004/0042416 A1 | 3/2004 | Ngo et al. | |
| 2004/0095932 A1 | 5/2004 | Astarabadi et al. | |
| 2004/0095934 A1 | 5/2004 | Cheng et al. | |
| 2004/0141521 A1 | 7/2004 | George | |
| 2004/0160900 A1 | 8/2004 | Lund et al. | |
| 2004/0199567 A1 | 10/2004 | Lund | |
| 2004/0199568 A1 | 10/2004 | Lund | |
| 2004/0199569 A1 | 10/2004 | Kalkunte et al. | |
| 2005/0047407 A1 | 3/2005 | Desai et al. | |
| 2005/0188106 A1 | 8/2005 | Pirbhai et al. | |
| 2005/0213589 A1 | 9/2005 | Shih | |
| 2006/0087969 A1 | 4/2006 | Santiago et al. | |
| 2006/0140185 A1 | 6/2006 | Norman et al. | |

**US 8,250,357 B2**

Page 3

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | 0076152 | 12/2000 |
| WO | 0163809 | 8/2001 |
| WO | 0223855 | 3/2002 |
| WO | 03103237 | 12/2003 |

### OTHER PUBLICATIONS

IEEE Potentials Publication; Dec. 1995/Jan. 1996; pp. 6. "http://www.ece.uc.edu/~paw/potentials/sample".*

Dennis Fowler; "VPNs Become a Virtual Reality"; Netnews, Apr./May 1998. pp. 1-4.*

European Search Report for PCT/US03/37009 (Jul. 4, 2004) 2 pgs.

Chan, Mun C. et al., "An architecture for broadband virtual networks under customer control." IEEE Network Operations and Management Symposium. Apr. 1996. pp. 135-144.

Chan, Mun C. et al "Customer Management and Control of Broadband VPN Services." Proc. Fifth IFIP/IEEE International Symposium of Integrated Network Management. May 1997. pp. 301-314.

Gasparro, D.M.; "Next-Gen VPNs: The Design Challenge." Data Communications. Sep. 1999. pp. 83-95.

Hanaki, M. et al., "LAN/WAN management integration using ATM CNM interface." IEEE Network Operations Management Symposium, vol. 1. Apr. 1996. pp. 12-21.

Keshav, S., "An Engineering Approach to Computer Networking: ATM networks, the internet, and the telephone network." Reading Mass: Addison-Wesley, Addison-Wesley Professional Computing Series. 1992. pp. 318-324.

Kim, E.C. et al., "The Multi-Layer VPN Management Architecture." Proc. Sixth IFIP/IEEE International Symposium on Integrated Network Management. May 1999. pp. 187-200.

Rao, J.R., Intranets and VPNs: Strategic Approach. 1988 Annual Review of Communications. 1998. pp. 669-674.

Tanenbaum, A.S., "Computer Networks." Upper Saddle River, N.J.: Prentice Hall PTR, 3rd Edition. 1996. pp. 348-364.

Office Action dated Aug. 1, 2007 for U.S. Appl. No. 10/163,260.
Amendment and Response filed on May 23, 2007 for U.S. Appl. No. 10/163,260.
Office Action dated Apr. 13, 2007 for U.S. Appl. No. 10/163,260.
Amendment and Response filed on Mar. 13, 2007 for U.S. Appl. No. 10/163,260.
Office Action dated Dec. 21, 2006 for U.S. Appl. No. 10/163,260.
Amendment and Response filed on Sep. 18, 2006 for U.S. Appl. No. 10/163,260.
Office Action dated May 18, 2006 for U.S. Appl. No. 10/163,260.
Office Action dated Aug. 22, 2007 for U.S. Appl. No. 09/650,298.
Response to Restriction Requirement Apr. 26, 2004 for U.S. Appl. No. 09/663,483.
Restriction Requirement dated Mar. 22, 2004 for U.S. Appl. No. 09/663,483.
Office Action dated Sep. 11, 2007 for U.S. Appl. No. 09/661,637.
Amendment and Response filed on Jun. 20, 2007 for U.S. Appl. No. 09/661,637.
Office Action dated Feb. 8, 2007 for U.S. Appl. No. 09/661,637.
Amendment and Response filed on Mar. 6, 2006 for U.S. Appl. No. 09/661,637.
Office Action dated Dec. 23, 2004 for U.S. Appl. No. 09/661,637.
Amendment and Response filed on Aug. 5, 2004 for U.S. Appl. No. 09/661,637.
Amendment and Response filed on Nov. 12, 2004 for U.S. Appl. No. 09/663,484.
Office Action dated May 6, 2004 for U.S. Appl. No. 09/663,484.
Amendment and Response filed on Feb. 18, 2004 for U.S. Appl. No. 09/663,484.
Office Action dated Aug. 12, 2003 for U.S. Appl. No. 09/663,484.
Notice of Allowance dated Jan. 4, 2007 for U.S. Appl. No. 09/894,471.
Amendment and Response filed on Nov. 2, 2006 for U.S. Appl. No. 09/894,471.
Office Action dated Oct. 26, 2006 for U.S. Appl. No. 09/894,471.
Amendment and Response filed on Mar. 10, 2006 for U.S. Appl. No. 09/894,471.

Office Action dated Dec. 14, 2004 for U.S. Appl. No. 09/894,471.
Notice of Allowance dated Nov. 7, 2006 for U.S. Appl. No. 09/771,346.
Amendment and Response filed on Oct. 18, 2006 for U.S. Appl. No. 09/771,346.
Office Action dated Jul. 18, 2006 for U.S. Appl. No. 09/771,346.
Amendment and Response filed on Mar. 13, 2006 for U.S. Appl. No. 09/771,346.
Office Action dated Jan. 25, 2005 for U.S. Appl. No. 09/771,346.
Amendment and Response filed on Oct. 14, 2004 for U.S. Appl. No. 09/771,346.
Office Action dated Mar. 26, 2004 for U.S. Appl. No. 09/771,346.
Notice of Allowance dated Nov. 19, 2006 for U.S. Appl. No. 10/163,162.
Amendment and Response filed on Aug. 5, 2006 for U.S. Appl. No. 10/163,162.
Office Action dated May 5, 2006 for U.S. Appl. No. 10/163,162.
Notice of Allowance dated Jan. 4, 2007 for U.S. Appl. No. 10/163,261.
Amendment and Response filed on Nov. 9, 2006 for U.S. Appl. No. 10/163,261.
Office Action dated Nov. 3, 2006 for U.S. Appl. No. 10/163,261.
Amendment and Response filed on Aug. 22, 2006 for U.S. Appl. No. 10/163,261.
Office Action dated May 22, 2006 for U.S. Appl. No. 10/163,261.
Notice of Allowance dated Jul. 27, 2006 for U.S. Appl. No. 10/163,073.
Office Action dated May 30, 2007 for U.S. Appl. No. 10/273,669.
Amendment and Response filed on Mar. 9, 2007 for U.S. Appl. No. 10/273,669.
Office Action dated Sep. 21, 2006 for U.S. Appl. No. 10/273,669.
Amendment and Response filed on Jun. 21, 2006 for U.S. Appl. No. 10/273,669.
Office Action dated Feb. 21, 2006 for U.S. Appl. No. 10/273,669.
Notice of Allowance dated Aug. 14, 2007 for U.S. Appl. No. 10/163,071.
Amendment and Response filed on Jul. 17, 2007 for U.S. Appl. No. 10/163,071.
Office Action dated Jul. 3, 2007 for U.S. Appl. No. 10/163,071.
Amendment and Response filed on May 6, 2007 for U.S. Appl. No. 10/163,071.
Office Action dated Nov. 7, 2006 for U.S. Appl. No. 10/163,071.
Amendment and Response filed on Sep. 1, 2006 for U.S. Appl. No. 10/163,071.
Office Action dated Jun. 1, 2006 for U.S. Appl. No. 10/163,071.
Amendment and Response filed on Mar. 6, 2006 for U.S. Appl. No. 10/163,071.
Office Action dated Dec. 2, 2005 for U.S. Appl. No. 10/163,071.
Notice of Allowance dated Nov. 29, 2006 for U.S. Appl. No. 10/163,079.
Amendment and Response filed on Nov. 1, 2006 for U.S. Appl. No. 10/163,079.
Office Action dated Oct. 27, 2006 for U.S. Appl. No. 10/163,079.
Amendment and Response filed on Aug. 17, 2006 for U.S. Appl. No. 10/163,079.
Office Action dated May 17, 2006 for U.S. Appl. No. 10/163,079.
Notice of Allowance dated Jul. 17, 2007 for U.S. Appl. No. 10/298,815.
Amendment and Response filed on Mar. 9, 2007 for U.S. Appl. No. 10/298,815.
Office Action dated Feb. 23, 2007 for U.S. Appl. No. 10/298,815.
Notice of Allowance dated Jun. 27, 2005 for U.S. Appl. No. 10/232,979.
Notice of Allowance dated Jul. 5, 2007 for U.S. Appl. No. 11/466,098.
Amendment and Response filed on Aug. 10, 2007 for U.S. Appl. No. 10/163,260.
Notice of Allowance dated Dec. 1, 2004 for U.S. Appl. No. 09/661,636.
Amendment and Response filed on Sep. 2, 2004 for U.S. Appl. No. 09/661,636.

**US 8,250,357 B2**

Page 4

Office Action dated May 28, 2004 for U.S. Appl. No. 09/661,636.
Amendment and Response filed on Mar. 22, 2004 for U.S. Appl. No. 09/661,636.
Office Action dated Nov. 18, 2003 U.S. Appl. No. 09/661,636.
Amendment and Response filed on Apr. 29, 2007 for U.S. Appl. No. 09/661,130.
Office Action dated Dec. 28, 2006 for U.S. Appl. No. 09/661,130.
Amendment and Response filed on Mar. 6, 2004 for U.S. Appl. No. 09/661,130.
Office Action dated Oct. 18, 2004 for U.S. Appl. No. 09/661,130.
Amendment and Response filed on Apr. 9, 2004 for U.S. Appl. No. 09/661,130.
Office Action dated Nov. 5, 2003 for U.S. Appl. No. 09/661,130.
Notice of Allowance dated Jun. 14, 2007 for U.S. Appl. No. 10/067,106.
Amendment and Response filed on Mar. 10, 2007 for U.S. Appl. No. 10/067,106.
Office Action dated Nov. 16, 2006 for U.S. Appl. No. 10/067,106.
Amendment and Response filed on Aug. 28, 2006 for U.S. Appl. No. 10/067,106.
Office Action dated Mar. 27, 2006 for U.S. Appl. No. 10/067,106.
Amendment and Response filed on Nov. 6, 2006 for U.S. Appl. No. 09/663,483.
Office Action dated Jul. 6, 2006 for U.S. Appl. No. 09/663,483.
Amendment and Response filed on Mar. 13, 2006 for U.S. Appl. No. 09/663,483.
Advisory Action dated Nov. 12, 2004 for U.S. Appl. No. 09/663,483.
Amendment and Response filed on Oct. 8, 2004 for U.S. Appl. No. 09/663,483.
Office Action dated Jun. 3, 2004 for U.S. Appl. No. 09/663,483.
Amendment and Response filed on Feb. 26, 2004 for U.S. Appl. No. 09/663,483.
Office Action dated Aug. 21, 2003 for U.S. Appl. No. 09/663,483.
Supplemental Amendment and Response filed on Sep. 17, 2007, 2007 for U.S. Appl. No. 09/663,457.
Office Action dated May 5, 2004 for U.S. Appl. No. 09/661,637.
Notice of Allowance dated Jul. 30, 2007 for U.S. Appl. No. 09/663,485.
Amendment and Response filed on Jun. 11, 2007 for U.S. Appl. No. 09/663,485.
Office Action dated Jan. 11, 2007 for U.S. Appl. No. 09/663,485.
Amendment and Response filed on Aug. 28, 2006 for U.S. Appl. No. 09/663,485.
Office Action dated Jul. 26, 2007 for U.S. Appl. No. 09/663,485.
Amendment and Response filed on Feb. 2, 2006 for U.S. Appl. No. 09/663,485.
Office Action dated Dec. 21, 2004 for U.S. Appl. No. 09/663,485.
Amendment and Response filed on Nov. 16, 2004 for U.S. Appl. No. 09/663,485.

Office Action dated May 14, 2004 for U.S. Appl. No. 09/663,485.
Amendment and Response filed on Mar. 15, 2004 for U.S. Appl. No. 09/663,485.
Office Action dated Sep. 8, 2003 for U.S. Appl. No. 09/663,485.
Office Action dated Aug. 8, 2007 for U.S. Appl. No. 09/663,457.
Amendment and Response filed on Jul. 11, 2007 for U.S. Appl. No. 09/663,457.
Office Action dated May 17, 2007 for U.S. Appl. No. 09/663,457.
Amendment and Response filed on Oct. 2, 2006 for U.S. Appl. No. 09/663,457.
Office Action dated Apr. 22, 2005 for U.S. Appl. No. 09/663,457.
Office Action dated Aug. 27, 2004 for U.S. Appl. No. 09/663,457.
Amendment and Response filed on Jun. 21, 2004 for U.S. Appl. No. 09/663,457.
Office Action dated Dec. 11, 2003 for U.S. Appl. No. 09/663,457.
Notice of Allowance dated Nov. 21, 2006 for U.S. Appl. No. 09/663,484.
Amendment and Response filed on Aug. 24, 2006 for U.S. Appl. No. 09/663,484.
Office Action dated Feb. 24, 2006 for U.S. Appl. No. 09/663,484.
Amendment and Response filed on Feb. 7, 2006 for U.S. Appl. No. 09/663,484.
Office Action dated Apr. 6, 2005 for U.S. Appl. No. 09/663,484.
Lawrence, J. Lang et al."Connecting Remote FDDI Installations with Single-Mode Fiber, Dedicated Lines, or SMDS." Jul. 1990; ACM SIGCOMM Computer Communication Review. vol. 20, Issue 3; pp. 72-82.
IEEE Potentials Publication; "Local Area Networks" Dec. 1995/Jan. 1996; pp. 6. http://www.ece.uc.edu/~paw/potentials/sample.
Office Action dated Oct. 18, 2007 for U.S. Appl. No. 09/663,483.
Office Action dated Oct. 16, 2007 for U.S. Appl. No. 09/661,130.
Office Action dated Nov. 28, 2007 for U.S. Appl. No. 09/952,520.
A lightweight Protocol for Interconnection Heterogenous Devices in Dynamic Environments, (c) 1999, obtained from the Internet at : http//ieeexplore.ieee.org/iel5/6322/16898/00778477.pdf.
The Guide to Computing Literature, Jairo A.: A Framework and Lightweight Protocol for Multimedia Network Management, vol. 8, Issue 1, published 2000, ISSN: 1064-7570.
Bookfinder4u.com: High Performance Networks by Ahmed N. Tantawy, ISBN-10: 0792393716, Published 1993, Lightweight Protocols.
Non-Final Office Action for U.S. Appl. No. 10/991,969, dated Feb. 20, 2008.
Non-Final Office Action for U.S. Appl. No. 10/273,669, dated Feb. 20, 2008.
Non-Final Office Action for U.S. Appl. No. 10/949,943 dated Feb. 14, 2008.
Restriction Requirement for U.S. Appl. No. 11/556,697, dated Mar. 13, 2008.

* cited by examiner



*Fig.1*



*Fig.2*



*Fig. 3*



- EACH SUBSCRIBER HAS A SET OF PARTITIONED VIRTUAL ROUTERS (VRS)
- EACH VR IS THE EQUIVALENT OF AN INDEPENDENT HARDWARE ROUTER
- VR AS AN OBJECT GROUP ENABLES CUSTOMIZED SERVICES PER SUBSCRIBER
- INVISION ALLOWS EASE OF SERVICE PROVISIONING AND MAINTENANCE OF
  SERVICES ACROSS ALL IPSX UNITS IN A SP NETWORK
- IP NETWORK OPERATING SYSTEM'S (IPNOS) OPEN APPLICATION PROGRAM
  INTERFACE (API) ENABLES NEW SERVICES TO BE CONTINUALLY ADDED TO THE PLATFORM

Fig. 4





Fig.5

- EACH SUBSCRIBER HAS A SET OF PARTITIONED VIRTUAL ROUTERS (VRS) 210
- EACH VR 210 IS THE EQUIVALENT OF AN INDEPENDENT HARDWARE ROUTER
- VR 210 AS AN OBJECT GROUP 211 ENABLES CUSTOMIZED SERVICES PER SUBSCRIBER
- INVISION 221 ALLOWS EASE OF SERVICE PROVISIONING AND MAINTENANCE OF SERVICES ACROSS ALL IPSX UNITS 201 IN A SP NETWORK 200
- IP NETWORK OPERATING SYSTEM'S (IPNOS) 220 OPEN APPLICATION PROGRAM INTERFACE (API) ENABLES NEW SERVICES TO BE CONTINUALLY ADDED TO THE PLATFORM



Fig 6



*Fig. 7*

- SUPPORT FOR A LONG LIST OF TECHNOLOGY STANDARDS
- INTEROPERATES WITH EXISTING ACCESS CONCENTRATION AND CORE NETWORK ELEMENTS
- OFFER INTERWORKING BETWEEN FRAME RELAY AND IP NETWORKS
- NETWORK ADDRESS TRANSLATION (NAT) ENABLES ENTERPRISE SUBSCRIBERS
  TO LEAVE THEIR NETWORK ADDRESSING UNTOUCHED
- MERGE IP AND LEGACY NETWORKS INTO ONE WITH COS GUARANTEES

*Fig.8*

230

□ HARDWARE:
  ▷ 26-SLOT, TWO-SIDED CHASSIS ~831
  ▷ 22 GBPS PACKET RING MIDPLANE ~832
  ▷ THREE TYPES OF SERVICE BLADES~239
    ○ CONTROL~234
    ○ ACCESS~238
    ○ PROCESSOR~236
  ▷ SPECIALIZED PROCESSING DAUGHTER CARDS FOR SERVICE BLADES
  ▷ POWER SUPPLY SYSTEM~2A1

220

□ SOFTWARE:
  ▷ IP NETWORK OPERATING SYSTEM (IPNOS) ~223
  ▷ VIRTUAL ROUTING ~810
  ▷ IP SERVICE SUITE ~820
    ○ IPSEC (DIAL AND DEDICATED) ~821
    ○ APPLICATION PROXY FIREWALL ~822
    ○ NETWORK ADDRESS TRANSLATION (NAT) ~823
    ○ PPTP TUNNEL TERMINATION ~824
    ○ BANDWIDTH MANAGEMENT~825
    ○ MULTIPROTOCOL LABEL SWITCHING (MPLS) ~826
    ○ FRAME RELAY TO IPSEC INTERWORKING ~827



Fig. 9



*Fig. 10*



*Fig. 11*



*Fig 12*



*Fig. 13*



Fig. 14



*Fig. 15*

US 8,250,357 B2

1

# TUNNEL INTERFACE FOR SECURING TRAFFIC OVER A NETWORK

## CROSS-REFERENCES TO RELATED INVENTIONS

This application claims the benefit under 35 U.S.C. 119(e) of U.S. Provisional Application Ser. No. 60/232,516 filed Sep. 14, 2000 and U.S. Provisional Application Ser. No. 60/232,577 filed Sep. 13, 2000, both of which are incorporated by reference.

## FIELD OF THE INVENTION

This invention relates to the field of internet processors, and more specifically to a method and apparatus of delivering security services such as firewalls.

## BACKGROUND OF THE INVENTION

The service provider game has grown extremely crowded and fiercely competitive, with numerous players offering similar products and services. While having a large number of comparable services is arguably beneficial to the enterprise, it poses a host of potentially disastrous consequences for a service provider. If all competitors in a given market are offering services that are indistinguishable by the customer base, the burden of differentiation falls squarely on cost, with the least-cost competitor emerging "victorious". Jockeying for the cost-leader position rapidly drives down service pricing, reducing margins to rubble and rendering the service a commodity. Furthermore, numerous offerings that are similar in attributes and cost make it very difficult to lock in customers.

Operational costs also present a significant challenge to service providers. Cumbersome, manual provisioning processes are the primary culprits. Customer orders must be manually entered and processed through numerous antiquated back-end systems that have been pieced together. Once the order has been processed, a truck roll is required for onsite installation and configuration of Customer Premises Equipment (CPE), as well as subsequent troubleshooting tasks. This is a slow and expensive process that cuts into margins and forces significant up-front charges to be imposed on the customer. In order to be successful in today's market, service providers must leverage the public network to offer high-value, differentiated services that maximize margins while controlling capital and operational costs. These services must be rapidly provisioned and centrally managed so that time-to-market and, more importantly, time-to-revenue are minimized. Traditional methods of data network service creation, deployment, and management present significant challenges to accomplishing these goals, calling for a new network service model to be implemented.

Basic Internet access, a staple of service provider offerings, has been commoditized to the point that margins are nearly non-existent. This fact has driven service providers to look for new value-added features and services to layer over basic connectivity so that they are able to differentiate on factors other than cost. The most significant opportunity for differentiation is found in managed network services. Managed network services enable enterprise IT organizations to outsource time-consuming tactical functions so that they can focus strategic core business initiatives.

Enterprise customers are now demanding cost-effective, outsourced connectivity and security services, such as Virtual Private Networks (VPNs) and managed firewall services.

2

Enterprise networks are no longer segregated from the outside world; IT managers are facing mounting pressure to connect disparate business units, satellite sites, business partners, and suppliers to their corporate network, and then to the Internet. This raises a multitude of security concerns that are often beyond the core competencies of enterprise IT departments. To compound the problem, skilled IT talent is an extremely scarce resource. Service providers, with expert staff and world-class technology and facilities, are well positioned to deliver these services to enterprise customers.

While IT managers clearly see the value in utilizing managed network services, there are still barriers to adoption. Perhaps the most significant of these is the fear of losing control of the network to the service provider. In order to ease this fear, a successful managed network service offering must provide comprehensive visibility to the customer, enabling them to view configurations and performance statistics, as well as to request updates and changes. Providing IT managers with powerful Customer Network Management (CNM) tools bolsters confidence in the managed network service provider and can actually streamline the service provisioning and maintenance cycle.

Customer Premises Equipment (CPE)-Based Managed Firewall Services

Data network service providers have traditionally rolled out managed network service offerings by deploying specialized CPE devices at the customer site. This CPE is either a purpose-built network appliance that, in addition to providing specific service features, may also serve some routing function, or a mid to high-end enterprise-class server platform, typically UNIX-based. In the case of a managed firewall solution, the CPE device provides services that may include VPN tunnel termination, encryption, packet filtering, access control listings, and log files. The CPE at each customer site is aggregated at a multiplexer via leased lines and/or public Frame Relay PVCs (permanent virtual circuits) at the service provider POP (point of presence), then into a high-end access router and across the WAN (wide area network).

In many cases, service providers and enterprise customers find it too expensive and cumbersome to deploy CPE-based security at every site, but rather deploy secure Internet access points at one or two of the largest corporate sites. In this model, all remote site Internet traffic is backhauled across the WAN to the secure access point and then out onto the Internet, resulting in increased traffic on the corporate network and performance sacrifices.

Service providers face significant challenges when deploying, managing and maintaining CPE-based managed firewall services. When a customer expresses interest in utilizing such a service, a consultation with experienced service professionals is required to understand the corporate network infrastructure and site-specific security requirements, yielding a complex set of security policies. This may be accomplished through a set of conference calls or a number of on-site visits. Once the security requirements and policies have been identified, the service provider must procure the CPE device. In some cases, the equipment vendor may provide some level of pre-configuration based upon parameters supplied by the service provider. While CPE vendors are driving towards delivering fully templatized, pre-configured systems that are plug-and-play by enterprise staff, most service providers still assume the responsibility for on-site, hands-on configuration, and a truck-roll to each of the customer sites is necessary. This is particularly true in server-based CPE systems, where a relatively high degree of technical sophistication and expertise is required to install and configure a UNIX-based system.

US 8,250,357 B2

3

Typically, a mid-level hardware and security specialist is sent onsite, along with an account manager, to complete the CPE installation and configuration. This specialist may be a service provider employee or a systems integrator/Value-Added Reseller (VAR) who has been contracted by the service provider to complete CPE rollout. This complex process begins with physical integration of the CPE device into the customer network. In the case of a CPE appliance, where the OS and firewall/VPN software components have been pre-loaded, the tech can immediately proceed to the system configuration phase. Server-based CPE services, however, require the additional time-consuming step of loading the system OS and software feature sets, adding a further degree of complexity.

In the configuration phase, the tech attempts to establish contact between the CPE device and central management system at the service provider NOC (network operations center). In cases where the device has not been previously assigned an IP address, an out-of-band signaling mechanism is required to complete the connection, typically a modem and a plain old telephone service (POTS) line. If the integration process has been successful, NOC staff should be able to take over the process, pushing specific policy configurations (and possibly an IP address) down to the CPE device through a browser-driven management interface. This entire process must be repeated for every enterprise site utilizing the managed-firewall service.

Additionally, maintenance processes and costs for CPE-based managed firewall services can also be overwhelming to both the service provider and enterprise customers. Enterprises are forced to either keep cold spares onsite or be faced with periods of absent security when their firewall fails, a situation that is unacceptable to most of today's information intensive corporations. Service providers must have an inventory of spares readily available, as well as staff resources that can, if necessary, go onsite to repeat the system configuration process. Troubleshooting thousands of CPE devices that have been deployed at customer sites is an extremely formidable challenge, requiring extensive call center support resources, as well technicians that can be quickly deployed onsite.

As CPE-based firewall services have traditionally been deployed in private enterprise networks, the original management systems for these devices have difficulty scaling up to manage several large, multi-site service provider customers. CPE device vendors are scrambling to ramp up these systems to carrier-grade and scale. Firewall management systems are typically GUI-based (graphical user interface-based), browser-driven interfaces that run on industrial grade UNIX platforms in the service provider NOC. The management system interfaces with the CPE devices based on IP address. The CPE-based managed firewall model faces service providers with another issue: capital costs. In addition to the significant costs required to build out a POP/access infra-structure, including multiplexers and high-capacity access routers, the service provider must also assume the initial costs of the CPE device, including firewall and VPN software licensing charges. In many cases, these costs are passed on to the customer. This creates steep up-front costs that, coupled with per-site installation charges, can present a serious barrier to service adoption. In markets where several service providers are offering managed firewall services, a service provider may absorb the CPE cost to obtain a price leadership position, cutting deeply into margins.

The CPE-based model is also limited when rolling out services beyond the managed firewall offering. New services,

4

such as intrusion detection, may require additional hardware and/or software. This results in higher capital costs, as well as another expensive truck roll.

There is also a performance penalty in conventional IP-SEC-mode (internet protocol secure mode) transmissions, in that each packet going through must be examined at the sending end of a transmission to determine whether it must be encrypted, and then each packet at the receiving end of the transmission to determine whether it must be decrypted.

Thus, there is a need for a method and apparatus of delivering a variety of network services, for example security services such as firewalls and secure transmission of date across a network such as the internet.

## SUMMARY OF THE INVENTION

The present invention provides a flexible, scalable hardware and software platform that allows a service provider to easily provide internet services, virtual private network services, firewall services, etc., to a plurality of customers. This solution can be changes to provision each customer with more or less processing power and storage, according to individual changing needs.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a block diagram of one embodiment of the present invention, system 100 having a plurality of ISP boxes 110 connected to the internet 99

FIG. 2 is a block diagram of one embodiment of the present invention, service provider network 200.

FIG. 3 is a block diagram of one embodiment of the present invention, an IP service delivery platform 300.

FIG. 4 is a block diagram of one embodiment of the present invention, a system 400 providing a plurality of virtual private networks 410, 420, 430, 440.

FIG. 5 is a block diagram of one embodiment of the present invention, a ring-network hardware platform 230.

FIG. 6 is a block diagram of one embodiment of the present invention, service processing switch 600.

FIG. 7 is a block diagram of one embodiment of the present invention, an integrated system 700 including conventional existing network elements.

FIG. 8 is a block diagram of one embodiment of the present invention, hardware elements 230 and software elements 220.

FIG. 9 is a block diagram of one embodiment of the present invention, multiprocessor system 900 using ring network 932.

FIG. 10 shows a block diagram of a system 1000 for comparison.

FIG. 11 shows a block diagram of a system 1100 for comparison.

FIG. 12 shows a block diagram of a system 1200 for comparison.

FIG. 13 shows a block diagram of a system 1300 for comparison.

FIG. 14 shows a block diagram of one embodiment of the present invention, system 1400.

FIG. 15 shows a block diagram of one embodiment of the present invention, system 1500.

## DESCRIPTION OF PREFERRED EMBODIMENTS

In the following detailed description of the preferred embodiments, reference is made to the accompanying drawings that form a part hereof, and in which are shown by way

US 8,250,357 B2

<table>
<tr><th>5</th><th>6</th></tr>
</table>

of illustration specific embodiments in which the invention may be practiced. It is understood that other embodiments may be utilized and structural changes may be made without departing from the scope of the present invention.

The leading digit(s) of reference numbers appearing in the Figures generally corresponds to the Figure number in which that component is first introduced, such that the same reference number is used throughout to refer to an identical component which appears in multiple Figures. Signals and connections may be referred to by the same reference number or label, and the actual meaning will be clear from its use in the context of the description.

In some embodiments, the present invention deploys one or more virtual private networks (VPNs) running on one or more carrier-class platforms that scale to provide cost-effective solutions for internet service providers (ISPs). In particular, security services such as firewalls can be provided by the ISPs for services they provide to their customers, wherein a plurality of customers are hosted on a single network of processors. An ISP is providing hosting services (e.g., hosting an internet web site for a customer) and routing (moving data to and from the internet) for their customers.

FIG. 1 shows one embodiment of the present invention having a system 100 that includes a plurality of similar ISP (internet service provider) boxes 110 connected to the internet 99. In this embodiment, each box 110 represents a subsystem having routing services provided by a block called access router 111, and hosting services provided by blocks 113 and 114. The ISP is typically a company that provides internet services (such as connectivity to the internet, as well as servers that store data and provide data according to requests by users, and network connectivity to users) to a plurality of customers including customer A and customer B. In some embodiments, customer premises equipment 117 and 118 (also called CPE 117 and 118, this is hardware and the software that controls the hardware, that is installed at the customer's premises; this can include servers, routers and switches, and the network connecting to individual user's workstations, and various interfaces to external communications networks) is used to provide at least a portion of the function to support customers A and B respectively, and the ISP 110 provides the rest in blocks 113 and 114 respectively. The function to support customers includes such things as web site hosting, database and other servers, e-mail services, etc. The customer's CPE 117 and 118 connect to the ISP through, e.g., access router 111 and security services 112 to customer A site one 113 and customer B site one 114, and also to the internet 99 in a manner that isolates customer A and customer B from one another except for communications and E-mail that would normally pass across the internet 99.

Further, by establishing secure connections between two ISP boxes 110 across the internet 99, a virtual private network or VPN 410 (see FIG. 4 below) can be created. This function allows, for example, customer A's office at a first site (e.g., headquarters 117) to connect seamlessly to customer A's office at a second site (e.g., branch office 119) using what appears to them as a private network, but which actually includes some CPE at site 117, some services 113 provided within ISP 110.1, a secure encrypted connection across internet 99, some services also in ISP 110.2, and some CPE at site 119. Users at sites 117 and 119 can communicate with one another and share data and servers as if they were on a single private network provided by, e.g., VPN 410.

FIG. 2 is a block diagram of one embodiment of the present invention, service provider (SP) network 200. A conventional network "cloud" 98 includes the SP's internet protocol (IP) or asynchronous transfer mode (ATM) core, as is well known in

the internet art. IP system 201 connects to such existing infrastructure 98, as well as to other optional conventional hardware such as described in FIG. 2 below, to provide SP network 200. IP System 201 provides hardware 230 and software 220 to provide a plurality of virtual routers (VRs) 210. Each VR 210 provides support for router services and server services such as those that provide customer site services 113 of FIG. 1. Each VR 210 is supported by an object group 211, which is a group of generally dissimilar objects such as routing object 212, packet filtering object 213, firewall object 214, network address translation (NAT) object 215, and/or other objects. In some embodiments, each VR 210 is a separate instantiation.

In some embodiments, software 220 includes IP network operating system (IPNOS) 223, service management system (SMS) 221 (e.g., in some embodiments, this is the Invision™ software from CoSine Communications Inc., assignee of the present invention), and customer network management system (CNMS) 222 (e.g., in some embodiments, this is the Ingage™ software from CoSine Communications Inc., assignee of the present invention). SMS 221 provides such services as configuration of blades 239, defining subscribers, determining services, and generation of IP security (IPSec) public/private key pairs. CNMS 222 provides such services as providing subscribers (customers) visibility to services. In some embodiments, CNMS software runs at least in part in a user's CPE or workstation, typically at a company's information services (IS) headquarters.

In some embodiments, IP server switch (IPSX) hardware 230 includes one or more scalable hardware enclosures, each having a plurality of service "blades" 239 (i.e., an insertable and removable printed circuit card having one or more processors, each having its own CPU and memory) each connected in a ring configuration (such as a counter-rotating dual ring 232). In some embodiments, three types of blades 239 are provided: control blade(s) 234, processor blade(s) 236, and access blade(s) 238. IPSX hardware also includes highly available, redundant, and hot-swappable hardware support including power supplies 241 and fans 242.

FIG. 3 is a block diagram of one embodiment of the present invention, an IP service delivery platform (IPSDP) 300. The hardware and software of SP network 200 can be viewed as generating various network "clouds" such as edge cloud 95, access concentration cloud 96, and service processing cloud 97. These are built upon the existing conventional SP's IP or ATM core cloud 98 and they connect to the external internet cloud 99. IPSDP 300 includes an ISP's SP network 200 connected to one or more customer's offices 301 each of which includes some amount of CPE 110. In the embodiment shown, three corporate remote offices 301.1 are connected to SP network 200 using various conventional communications devices, well known to the art, such as frame relay switch 326, M13 multiplexor (mux) 327, DSLAM (digital subscriber link access multiplexor) 328, and dial-up RAS (remote access server) 329 (used to receive dial-up connections, for example, from the modem 311 connected to laptop computer 316 in portable system 310 of dial-up telecommuter 301.3). In the embodiment shown, SP network 200 includes two systems 201, on connecting through frame relay switch 326, M13 multiplexor (mux) 327, DSLAM 328, and dial-up RAS 329 to remote office's CPE 110, and the other connecting directly to the customer's corporate headquarter's CPE 1110 (which also includes a control and monitoring function provided by CNMS 222) using conventional communications protocols such as frame relay (FR, an access standard defined by the ITU-T in the 1.122 recommendation "Framework for Providing Additional Packet Mode Bearer Services"), internet pro-

US 8,250,357 B2

7

tocol (IP), FT1 (fractional T1), T1/E1 (a digital transmission link with capacity of 1.544 Megabits per second), FT3 (fractional T3), T3 (capacity of 28 T1 lines), and/or OC3 (optical carrier level 3=three times the OC1 rate of 51.840 Mbps) (each of which is a conventional communications service well known to the art).

In some embodiments, IPDSP 300 provides a VPN 410, using secure connections across the internet 99, to connect remote offices 301 to one another.

FIG. 4 is a block diagram of one embodiment of the present invention, a system 400 providing a plurality of virtual private networks 410, 420, 430, 440. VPNs 420, 430, and 440 are each equivalent to the VPN 410 that supports subscriber 1, except that they are for other subscribers. Each subscriber has a set of partitioned virtual routers 410. For example, subscriber 1 has two locations, 411 and 412, connected in a VPN 410. VR 210 at location 411 can include some CPE 110 as well as support provided in system 201-1. VR 210 at location 412 can include some CPE 110 as well as support provided in system 201-2. These two VRs 210 establish a "tunnel," a secure connection, that allows them to maintain secure communications that support the VPN 410 even across packet networks such as the internet 99. Each VR 210 is the equivalent of an independent hardware router. Since each VR 410 is supported by an object group 211, objects can be easily added or omitted to enable customized services on a subscriber-by-subscriber basis to meet each subscribers individual needs. SMS 221 running on SP network 200 allows ease of service provisioning (dynamically adding additional processors/processing power when needed, reducing the processors/processing power used for VPN 410 when not needed). In some embodiments, IPNOS 223 uses an open Application Program Interface (API) to enable new services to be added to the platform whenever needed.

In some embodiments, system 401 at a first site (e.g., an ISP premises locally connected to a customer office) includes IPSX 201-1 having a VR 210 connected to CPE 117. This system 401 appears to the outside world as a single router having firewall services, server(s) and user(s), etc. These functions can be provided by either or both VR 210 and CPE 117, thus allowing a customer to outsource many or most of these services to the service provider and IPSX 201-1. Similarly, system 402 at a second site (e.g., another ISP premises locally connected to a remote office of the same customer) includes IPSX 201-2 having a VR 210 connected to CPE 119. This system 402 also appears to the outside world as a single router having firewall services, server(s) and user(s), etc. These functions can be provided by either or both VR 210 and CPE 119, thus allowing a customer to outsource many or most of these services to the service provider and IPSX 201-2.

FIG. 5 is a block diagram of one embodiment of the present invention, a ring-network hardware platform 230. Hardware platform 230 includes plurality of service "blades" (i.e., an insertable and removable printed circuit card having one or more processors, each having its own CPU and memory) each connected in a ring configuration (such as a counter-rotating dual ring 232). In some embodiments, three types of blades are provided: control blade 234 (not shown here), processor blades 236 (providing such functions as point-to-point (PPTP) connectivity, firewall protection against hacking, intruders, or accidental access), and access blades 238 (providing such functions as NAT, encryption, and routing).

FIG. 6 is a block diagram of one embodiment of the present invention, service processing switch 600. In some embodiments, service processing switch 600 includes a hardware enclosure 230 having power supplies 241 that are hot-swappable, redundant, capable of automatic failover (when one

8

fails, others take over), and which can be AC or DC sourced. In some embodiments, dual hot-swappable, variable speed fans 242 are provided. In some embodiments, software updates can be made without system downtime by swapping out all object groups 211 (virtual routers), changing the software modules, and then resuming processing. In some embodiments, all service blades 239 are hot-swappable (they can be removed and/or inserted without bringing the system down) and include automatic failover from primary mode to protect mode. In some embodiments, dual counter-rotating rings 232 support primary and protect redundancy. In some embodiments, system 600 provides NEBS Level 3 compliance and is Y2K ready, provides SONET (synchronous optical network) 1+1 Line Protection Switching, and includes integrated metallic cross-connects to enable DS3 (digital signal level 3; 44,736,000 bits per second) blade automatic failover without touching the facility.

FIG. 7 is a block diagram of one embodiment of the present invention, an integrated system 700 including conventional existing network elements. Integrated system 700 optionally includes conventional frame relay switch 326, MI3 mux 327, DSLAM (DIGITAL SUBSCRIBER LINK ACCESS MULTIPLEXOR) 328, and RAS (REMOTE ACCESS SERVER) 329 connecting to customer's equipment such as CPE router 110 and dial-up system 310. In some embodiments, integrated system 700 optionally includes a core IP router 720 and/or a core ATM switch as part of an SP core 98. This provides support for a large number of conventional technology standards, and interoperability with existing access-concentration and core-network elements. It also offers interworking between frame-relay networks and IP networks. Network address translation (NAT) enables enterprise subscribers to leave their network addressing untouched. It also enables one to merge IP and legacy networks into one, with continuity of service (COS) guarantees.

FIG. 8 is a block diagram of one embodiment of the present invention, hardware elements 230 and software elements 220. Hardware elements 230 include a 26-slot, two-sided chassis 831 having a 22-gigabit per second (Gbps) ring midplane 832. Service blades 239 can be hot plugged into midplane 832 form either side of chassis 831. Three types of service blades 239 are provided: control blades 234, processor blades 236, and access blades 238. In some embodiments, four processors are provided on each service blade 239, each processor having a CPU and its own memory, allowing specialized processing to be performed on various different daughter cards of the blades 239.

In some embodiments, a single system chassis 831 provides a redundant back plane and blade-termination facilities 832. The access blades 238, processor blades 236, control blades 234, power supplies 241 and fan trays 242 are designed for hot-swappable operation—any of these components may be removed from service while the entire system remains operational. The metallic cross connect is a passive system that provides fail-over support to allow DS3 and DS1 access facilities to be switched from one access blade to another access blade should an access port or card fail. The phase 1 chassis provides 26 universal slots, each of which may be populated with control blades, access blades, and processor blades. To operate, the chassis must contain at least one control blade. Up to two control blades may be operational in a chassis at the same time. Access blades are added as input/output requirements grow, and processor blades are added as computation requirements scale.

In some embodiments, each system 230 supports up to twenty-five processing blades (PB) 236. Each processor blade 236 is designed to support three hundred Mbps of full

US 8,250,357 B2

9

10

duplex traffic while delivering IP services including application firewall, LT2P, PPTP, NAT, VPN router.

In some embodiments, each system 230 supports up to two control blades (CB) 234. CBs 234 provide overall system supervision, IP route calculation, software update management, and network management statistics logging services. When two CBs 234 are operational within a chassis 831, they remain synchronized such that should either CB 234 fail, the other CB 234 automatically takes over system operation. In this process all active services remain in progress. Each control blade 234 is hot swappable, so that when proper procedures are followed, a failed or malfunctioning CB 234 may be removed from on operational system 230 without bringing down any customer services.

In some embodiments, each CB 234 provides four ethernet interfaces for management traffic. Each ethernet interface has a distinct collision domain and may each be configured with a primary and secondary IP address. Ethernet interfaces designated for management use may be configured for primary and protected configurations, both sharing the same IP address, reducing ISP IP address requirements. The CB 234 ethernet interfaces may be configured for fully meshed communications over diverse paths to diverse operating systems. Each CB 234 is also equipped with a random # seed generator for use in security applications.

In some embodiments, each system 230 supports up to twenty-five access blades (AB) 238. Access blades 238 provide physical line termination, hardware-assisted IP forwarding, hardware assisted encryption services, and hardware assisted queue management. Each access blade 238 is hot swappable, so that when proper procedures are followed, a failed or malfunctioning ab may be removed from operational system 230 without bringing down any customer services. In some embodiments, 10/100 ethernet-, DS3-, and OC3-type access blades are supported by system 230.

FIG. 9 is a block diagram of one embodiment of the present invention, multiprocessor system 900 using ring network 932. In some embodiments, each of two network rings 933 and 934 connect nodes 931 together, where each blade 239 includes one or more nodes 931, and each node 931 is connected to one or more processors 930. In some embodiments, each processor is a high-performance processor such as an R12K processor from MIPS Corporation. In one embodiment, each blade 239 includes four nodes 931, each having one processor 930. Each processor 930 include its own CPU (central processing unit) 935 and memory 936, and optionally includes other hardware such as routers, encryption hardware, etc. Software tasks, in some embodiments, are split up such that one processor operates on one part of the data (e.g., the Level 7 processing) and another processor operates on another part of the data (e.g., the Level 3 processing). In other embodiments, the various processing portions of a task all run on a single processor, multiprocessing with other tasks that share that processor. Thus, the hardware provides scalability, where low-end systems include few processors that do all the work, and high-end systems include one hundred or more processors and the work is distributed among the processors for greater speed and throughput. In some embodiments, the plurality of processors 930 in the ring configuration includes forming dual counter rotating ring connections 933 and 934, each connecting to each of the plurality of processors 930.

In some embodiments, a separate control ring 935 is provided, connected to all processors 930. Data passed on the control ring 935 allows control communications to be passed between processors, and in particular, allows the control blade to configure and control the other blades in IPSX 201.

In other embodiments, control ring 935 is omitted, and its function is overlaid on rings 933 and 934.

Logical Queue Identifiers

In some embodiments, rings 933 and 934 are packet-passing rings. Each packet 950 placed in the rings includes a data portion 953 and a processor element identifier (PEID 951) that identifies for each node 931 which processor that packet is destined for, for example a 16-bit PEID that specifies one of 65526 PEs. If the PEID matches a processor on its particular node, the node 931 passes the packet to the proper processor 930; if not, the packet is forwarded to the next node 931. In some embodiments, each packet also includes a logical queue identifier (LQID) that identifies a software entity (for example, an object group for a particular VR 210) residing on that processor 930 for which the packet is destined.

In some embodiments, every node 931 has a unique, globally unique (i.e., unique within an IPSX 201, or within an ISP having a plurality of IPSXs 201) PEID 951. In some embodiments, the way this is done is that one takes the blade ID (e.g., five bits) and you append the PE number, which is, for example, an eleven bits. Put that together in some fashion and you'll get a unique ID that is globally unique within some hardware configuration. Note that packets including this PEID 951 are routable. Just by looking at the PEID 951, the system 201 has a topological structure so that it can route based on purely the PEID 951. The next thing to keep in mind is that system 201 is managing multiple virtual context. Each VR 210 in a system 201 is a virtual router to which packet are to be directed. When packets come into node N 931 for example, system 201 needs to be able to steer it to the appropriate logical entity, i.e., to the appropriate context and to the object channel that it represents. Thus, a logical queue ID 952 is appended that is unique within the destination processor (PE) 930. If an object in a processor 930 on node 1 930 wants to set up a channel to another object a processor 930 on node N 930, they need to use the LQID 952. A first LQID 952 and PEID 951 together represent the local end, and a second LQID 952 and PEID 951 together represent the remote end of the object and so the system can map the corresponding object channel, defining the object channel that is going across the network. From a networking perspective, PEID 951 looks like your IP address that routes packets like an IP address. But once you go to a particular node 931, the LQID looks like the UDP (User Datagram Protocol, a TCP/IP protocol describing how messages reach programs within a destination computer) code number. So system 201 (e.g., SMS 221) essentially signals and negotiates the proper LQID to have a channel going between those ends. This allows all the traffic coming into a PE 930 to be steered along the appropriate object path to the appropriate object channel on that object.

In some embodiments, an object could be talking on another channel to another object, or to the same object, using a different channel. In which case each channel uses a different LQID 952, but the same PEID 951.

In some embodiments, system 201 sets up a shortcut that circumvents traffic that otherwise would be transmitted outside system 201 and then back in (e.g., traffic between two different VRs 210 supporting different customers). To set up such a shortcut, system 201 allocates a different LQID 952 for the shortcut. Thus, an object channel has the normal point-to-point path for normal traffic and has a multi-point-to-point path which is used for shortcut traffic. So when packets come in to the object it knows whether the packet came in on the normal path or on the shortcut path. Similarly, when the object wants to use a shortcut, it also needs to allocate a different LQID for its outbound shortcut traffic. One interesting distinction of shortcut paths is that the normal point-to-

US 8,250,357 B2

<table>
<tr><td>11</td><td>12</td></tr>
</table>

point is bidirectional and data can flow in both directions, but shortcuts data flow flows in only one direction. So a receive site can have any number of transferred sites. Any number of objects can be transmitting to the same receive site. That is why it is called multi-point-to-point.

Further, some embodiments have different levels of shortcuts. For example, a packet can be sequentially passed to successive destinations in some embodiments. Thus there can be a complex multistage path. The shortcuts can trickle down to the ultimate end, where the packet cascades. Further, if one object knows a shortcut, it can tell other objects about its shortcut. So the other object does not have to come to the first object and then be directed to the shortcut destination, but rather can directly use the shortcut it has learned about.

While service providers recognize the tremendous revenue potential of managed firewall services, the cost of deploying, managing and maintaining such services via traditional CPE-based methods is somewhat daunting. Service providers are now seeking new service delivery mechanisms that minimize capital and operational costs while enabling high-margin, value-added public network services that are easily provisioned, managed, and repeated. Rolling out a network-based managed firewall service is a promising means by which to accomplish this. Deploying an IP Service Delivery Platform in the service provider network brings the intelligence of a managed firewall service out of the customer premises and into the service provider's realm of control.

An IP Service Delivery Platform consists of three distinct components. The first is an intelligent, highly scalable IP Service Processing Switch. Next is a comprehensive Service Management System (SMS) to enable rapid service provisioning and centralized system management. The last component is a powerful Customer Network Management (CNM) system which provides enterprise customers with detailed network and service performance systems, enable self-provisioning, and eases IT managers fears of losing control of managed network services.

In a network-based managed firewall service model, the service provider replaces the high-capacity access concentration router at the POP with an IP Service Processing Switch. This is higher-capacity, more robust, and more intelligent access switch, with scalable processing up to 100+ RISC CPUs. Just as with the access router, additional customer access capacity is added via installing additional port access blades to the IP Service Processing Switch chassis. Unlike conventional access routers, however, additional processor blades are added to ensure wire-speed performance and service processing.

The intelligence resident in the IP Service Processing Switch eliminates the need to deploy CPE devices at each protected customer site. Deployment, configuration, and management of the managed firewall service all take place between the IP Service Processing Switch and its Service Management System 221, which resides on a high-end UNIX platform at the service provider NOC. The customer also has the ability to initiate service provisioning and augmentation via a web-based Customer Network Management tool that typically resides at the customer's headquarters site. This is an entirely different service delivery paradigm, requiring minimal or no truck rolls or on-site intervention.

To roll out a managed network-based firewall service, the service provider's security staff provides a consultation to the enterprise, thereby gaining an understanding of the corporate network infrastructure and developing appropriate security policies (this is a similar process to the CPE model). Once this has been accomplished, the NOC security staff remotely accesses the IP Service Processing Switch (using the Service

Management System 221) at the regional POP serving the enterprise customer, and the firewall service is provisioned and configured remotely.

This model enables the service provider to leverage the enterprise's existing services infrastructure (leased lines and Frame Relay PVCs) to deliver new, value-added services without the requirement of a truck roll. All firewall and VPN functionality resides on the IP Service Processing Switch at the POP, thus freeing the service provider from onsite systems integration and configuration and effectively hiding the technology from the enterprise customer. Firewall inspection and access control functions, as well as VPN tunneling and encryption, take place at the IP Service Processing Switch and across the WAN, while the enterprise's secure leased line or Frame Relay PVC (permanent virtual circuit) access link remains in place. The customer interface is between its router and the IP Service Processing Switch (acting as an access router), just as it was prior to the rollout of the managed firewall service. Additionally, the customer has visibility into and control over its segment of the network via the CNM that typically resides at the headquarters site.

TABLE 1

Comparison Between CPE-based and Network-based Managed
Firewall Turn-up Processes

| Process | CPE-based Model | Network-based Model |
|---|---|---|
| Service Preparation | Security consultation to identify customer requirements/policies CPE device(s) ordered CPE device(s) preconfigured CPE device(s) shipped to customer site | Security consultation to identify customer requirements/policies |
| Service Rollout | Security technician deployed to site(s) OS/Firewall/VPN software loaded (server-based model) Physical network integration of device | Service provisioning and policy configuration deployed from NOC via Service Management System (SMS)—No truck roll needed |
| Additional Service Deployment | Repeat above for each additional service | Add configuration template to SMS and duplicate across all service points, provision with CNM—No truck roll |
| Maintenance/ Support | Technician on phone with customer testing CPE and technician at POP testing equipment | Technician at POP testing equipment |
| | Maintain inventory of spare units/components in service region | Order spares/replacement from central vendor repository—No truck roll necessary |
| | Ship spares to customer site as needed | |
| | Deploy technician to customer site to complete repairs if necessary | Integrate replacement unit component at POP |

The network-based firewall model also enables service providers to quickly and cost-effectively roll out managed firewall solutions at all enterprise customer sites. As a result, secure Internet access can be provided to every site, eliminating the performance and complexity issues associated with backhauling Internet traffic across the WAN to and from a centralized secure access point.

US 8,250,357 B2

13

As the IP Service Delivery Platform is designed to enable value-added public network services, it is a carrier-grade system that is more robust and higher-capacity than traditional access routers, and an order of magnitude more scalable and manageable than CPE-based systems. The platform's Service Management System enables managed firewall services, as well as a host of other managed network services, to be provisioned, configured, and managed with point-and-click simplicity, minimizing the need for expensive, highly skilled security professionals and significantly cutting service rollout lead-times. The Service Management System is capable of supporting a fleet of IP Service Processing Switches and tens of thousands of enterprise networks, and interfaces to the platform at the POP from the NOC via IP address. Support for incremental additional platforms and customers is added via modular software add-ons. Services can be provisioned via the SMS system's simple point and click menus, as well as requested directly by the customer via the CNM system.

Deployment of a robust IP Service Delivery Platform in the carrier network enables service providers to rapidly turn-up high value, managed network-based services at a fraction of the capital and operational costs of CPE-based solutions. This enables service providers to gain a least-cost service delivery and support structure. Additionally, it enables them to gain higher margins and more market share than competitors utilizing traditional service delivery mechanisms—even while offering managed firewall services at a lower customer price point.

The following embodiments explore four specific managed firewall service delivery architectures usable by service providers, systems integrators, and hardware/software vendors.

CPE-Based Models

Architecture One: Check Point/Nokia Appliance

This architecture employs a firewall/VPN CPE appliance, traditional access router, and software-based centralized management system to deliver a managed firewall solution. The specific components of this solution include:

1. Check Point/Nokia VPN-1/IP-330 appliance (50 user license) at branch sites
2. Check Point VPN-1/Firewall-1 software module (unlimited user license) on Sun Enterprise Ultra 250 server platform at headquarters
3. Cisco 7513 access router at the service provider's POP (redundant power, redundant RSP4)
4. Check Point Provider-1 management system at the service provider's NOC (supports 50 customers/module) with unlimited sites/customer on Sun Ultra 60 platform at Network Operations Center (NOC)

FIG. 10 shows a block diagram of a system 1000 providing a Managed Firewall Service with a CheckPoint/Nokia Appliance Solution.

Architecture Two: Check Point Server

This architecture employs a firewall/VPN CPE server, traditional access router, and software-based centralized management system to deliver a managed firewall solution. The specific components of this solution include:

5. Check Point VPN-1/Firewall-1 software module (50 user license) on Sun 5S server platform at branch sites
6. Check Point VPN-1/Firewall-1 software module (unlimited user license) on Sun Enterprise Ultra 250 server platform at headquarters
7. Cisco 7513 access router at the service provider POP (redundant power, redundant RSP4)

14

8. Check Point Provider-1 management system (supports 50 customers/module) with unlimited sites/customer on Sun Ultra 60 platform at NOC

FIG. 11 shows a block diagram of a system 1100, providing a Managed Firewall Service with a CheckPoint Firewall-1 Server-based Solution.

Architecture Three: WatchGuard Appliance Model

This architecture employs a firewall/VPN CPE appliance, traditional access router, and software-based centralized management system to deliver a managed firewall solution. The specific components of this solution include:

9. WatchGuard Firebox II Plus appliance at branch sites
10. Cisco 7513 access router at the service provider POP (redundant power, redundant RSP4)
11. WatchGuard for MSS management system (supports 500 customers/module) with unlimited sites/customer on Compaq Proliant 3000 Windows NT workstation platform, Event Processor on Sun Microsystems 5S server platform

FIG. 12 shows a block diagram of a system 1200, providing a Managed Firewall Service with a WatchGuard Appliance Solution. The CPE-based managed firewall service model requires installation and configuration of system components at three network points: the service provider POP, the service provider NOC, and the customer premises.

POP Infrastructure

Each of the three CPE-based architectures explored in this analysis employs an identical POP infrastructure. This access infrastructure is based on the Cisco 7513 router. The base configuration for the 7513 includes:

12. 13-slot chassis
13. IOS Service Provider system software
14. (2) power supplies
15. (2) Route Switch Processors (RSP4)
16. (2) RSP4 128 MB DRAM Option
17. (2) RSP4 20 MB Flash Card Option
18. 2-port Fast Ethernet Card
19. 64 MB DRAM Option
20. 8 MB SRAM Option

The RSP4 cards in this base configuration each consume one slot in the chassis, leaving 11 remaining for port adapters. An Ethernet card is added for software uploads. Ingress traffic is supported via dual-port channelized and/or dual-port unchannelized T3 cards (for dedicated T3 connections). Each channelized T3 port can support up to 128 DS0 or N×T1 channels Single-port OC-3 POS cards provide connectivity to the network uplink on the egress side. These cards each occupy a single slot. Each card requires a programmable Versatile Interface Processor (VIP2), as well as an additional 64 MB of DRAM and 8 MB of SRAM. The VIP2 and additional memory reside on the T3/OC-3 cards and do not consume additional slots.

As described in the assumptions, a traditional multiplexer exists at each POP to aggregate various sub-T1 customer access links up to the channelized T3 interfaces on the Cisco 7513 router. As the POP infrastructure installation and configuration processes are uniform across all managed firewall service models explored in this analysis, the costs associated with these processes will not be quantified.

US 8,250,357 B2

15

Network-Based Model of the Present Invention—Architecture Four

IP Service Delivery Platform **300** that includes an IP Service Processing Switch (IPSX **230**), a Service Management System (SMS **221**) and a Customer Network Management System (CNMS **222**).

This architecture employs an IP Service Processing Switch and a software-based centralized SMS to deliver a managed firewall solution. The specific components of this solution include:

21. IPSX **230** (IP Service Processing Switch) at service provider POP
22. Service Management System **221** on Sun Ultra 60 server at service provider NOC
23. InGage™ Customer Network Management System at the subscriber's headquarters

FIG. **13** shows a block diagram of a system **1300** that provides a Managed Firewall Service with CoSine's Network-based Solution of the present invention.

FIG. **14** shows a block diagram of one embodiment of the present invention, system **1400**. System **1400** includes a first processing system **1410** and a second processing system **1420**, each of which, in some embodiments, has a plurality of processors such that they can be incrementally expanded. In some embodiments, one or both of the first and second processing systems includes one or more control processors, one or more access processors, and one or more processing processors, as described above. In such systems, packets will be transmitted both ways, but for simplicity of explanation, packets transmitted from system **1410** to **1420** are explained. The same explanation can be applied to packets going the other direction. System **1410** includes a source of data packets **1401**, and system **1420** has the destination **1402** for these packets. In some embodiments, one or more virtual routers **1411** (and possibly **1412** and **1413**) are provided in system **1410**, wherein a separate virtual router can be assigned to each of a plurality of different customers. Thus each customer views the system **1410** as having only its router (e.g., virtual router **1411** for a first customer, virtual router **1412** for a second customer, etc.) and each customer does not "see" the other virtual routers for the other customers. These other customers would have other packet sources (not shown) to supply packets to their virtual routers. Similarly, in some embodiments, system **1420** includes one or more virtual routers **1421** (and possibly **1422** and **1423**), wherein a separate virtual router can be assigned to each of a plurality of different customers. Thus each customer views the system **1420** as having only its one router (e.g., virtual router **1421** for the first customer, virtual router **1422** for another customer, etc.) and each customer does not "see" the other virtual routers for the other customers. The IP SEC mode provides that each transmitting virtual router examines each packet (e.g., by the encrypt-bit detection block **1414**) being sent to see if it is to be encrypted or not (e.g., by examining a bit in the packet), and if so passes the packet to encryptor **1415**, which encrypts the packet using a suitable encryption method (many of which are known in the art, such as standard public-key/private-key IP encryption). The virtual router **1411** would then route the encrypted packet to virtual router **1421**. Since encryption takes time, router **1411** typically will not encrypt every packet, but will instead examine each packet to determine whether to encrypt or not. Similarly, virtual router **1421** will examine each incoming packet using decrypt-detection block **1424** being received to see if it is to be decrypted or not (e.g., by examining a bit in the packet), and if so passes the packet to decryptor **1425**, which decrypts the packet using a suitable decryption method corresponding to the encryption method

16

of encryptor **1415**. The decrypted packets are then routed to the packet destination **1402**. As is typical for internet packet transmission, there may be any number of other intermediate nodes (not shown) between router **1411** and router **1421**, wherein packets are received and sent on towards their destination by each intermediate router along the way. If a virtual private network (VPN) is desired between packet source **1401** and packet destination **1402**, (e.g., by forming a tunnel for the packets) then every packet is parked as requiring encryption and decryption for as long as the connection is maintained. In some embodiments, the detection of whether to encrypt or not, as described just above, is thus redundant. However, other virtual routers (e.g., **1412** and **1413**) may desire to send packets that are not to be encrypted, and thus each virtual router **1411**, **1412**, and **1413** are configured to test each outgoing packet, and each virtual router **1421**, **1422**, and **1423** are configured to test each ingoing packet, to determine whether or not to encrypt or decrypt.

FIG. **15** shows a block diagram of another embodiment of the present invention, system **1500**. A first processing system **1510** includes one or more virtual routers **1511**, **1512**, and **1513**, and a second first processing system **1520** includes one or more virtual routers **1521**, **1522**, and **1523**. In some embodiments, at least one of the virtual routers **1511** does not examine each packet (i.e., to determine whether or not to encrypt), but instead is set up as part of a tunnel, wherein all tunnel traffic is encrypted. Thus all traffic going out of virtual router **1511** goes to encryptor router (or node) **1515**, which encrypts all of its traffic and then routes those encrypted packets onto the internet, destined for decryptor router (or node) **1525**. There, all traffic is decrypted (without needing to examine each packet to determine whether or not to decrypt), and then routed to the appropriate one of virtual routers **1521**, **1522**, or **1523**. Traffic to virtual router **1521** is then sent to packet destination **1402**. Thus, in system **1500**, the setting up of the tunnel across the internet between the packet source **1401** and the packet destination **1402** includes a sending virtual router **1511** which need not examine every packet, but instead inserts the encryption node or router **1515** into the path for every packet. The encryption node **1515** simply becomes one more node along the path between the source **1401** and the destination **1402**. Each virtual router **1511** to **1513** can share the same encryption node **1515** if it is set up to be sending tunnel traffic. Those nodes not sending tunnel traffic can simply bypass the encryption node **1515** (and those virtual routers **1513** can, in some embodiments, examine each packet as described above to determine whether or not to encrypt, or can simply assume that all its traffic is not to be encrypted). This simplification also applies to the decryption side in system **1520**.

POP Infrastructure

The POP access infrastructure in the network-based managed firewall service model is based on the CoSine Communications IPSX 9000 Service Processing Switch. The base configuration for the switch includes:

24. 26-slot chassis
25. Redundant power supply
26. IPNOS Base Software
27. Ring Bridge & Ring Bridge Pass-Thru (to complete mid-plane)
28. Control Blade (for communications with Invision Services Management System)
29. Dual-port Channelized DS3 Access Blade
30. Dual-port Unchannelized DS3 Access Blades
31. Processor Blade
32. OC-3c POS Trunk Blade

US 8,250,357 B2

17

## Analysis

Analysis of the four service delivery architectures for deploying a managed firewall service reveals extremely compelling data in favor of implementing the network-based model based on the CoSine Communications IP Service Delivery Platform. Significant advantages are gained by utilizing this model in each of the following areas:

## Operational "Soft" Costs

The network-based managed firewall solution eliminates most of the steep operational costs that are associated with deploying a CPE-based solution, specifically the per site truck roll and device installation charges. The CheckPoint server-based CPE deployment and installation operational costs alone exceed the total five-year capital equipment investment required in the CoSine Communications network-based model. Though the installation and configuration costs for the POP and NOC build-outs are not quantified in this study due to the uniformity of these processes across all solutions, it is worthy to note that the greater capacity of the CoSine IPSX 9000 Service Processing Switch and Invision Service Management System result in fewer components (switch chassis, NOC servers and software) that need to be installed and configured.

## Time to Market, Time to Revenue

The network-based managed firewall solution enables service providers to greatly shorten the lead-time required to deploy the managed firewall service. The removal of the CPE component from the service offering eliminates the need to procure the device, eliminating a delay in service rollout. This also eliminates the delay that is associated with scheduling an onsite installation.

## Complexity

The network-based managed firewall solution greatly reduces the complexity associated with deploying the service. The number of distributed devices is reduced from thousands of remote customer sites to only a few already staffed POPs, simplifying management and maintenance significantly.

The network-based managed firewall service model creates a new source of revenue for service providers that is scalable, repeatable, and cost-effective. Leveraging centrally-managed services enables service providers to derive greater value from the existing basic access infrastructure. The network-based model eliminates expensive onsite installation and maintenance required of CPE-based solutions, and provides a foundation to deploy additional value-added services via the same delivery mechanism. Elimination of the CPE device also effectively hides the technology of the managed firewall solution from the customer, reducing internal network complexity and technical anxiety.

One aspect of the present invention provides a method of packet routing. The method includes connecting a plurality of processors in a network, assigning a unique processor identifier (PEID) to each of the processors, routing a first packet to a first one of the processors across the network, wherein each such packet includes a PEID value corresponding to a PEID of one of the processors, and wherein the routing to the first processor is based on the PEID value in the first packet, establishing a plurality of objects in the first processor, assigning a logical queue identifier (LQID) to a first one of the objects in the first processor, wherein each packet also includes an LQID value corresponding to an LQID of one of the objects, and routing the first packet to the first object based on the LQID value in the first packet.

Some embodiments further include assigning a plurality of different LQIDs to the first object.

18

Some embodiments further include routing a plurality of packets, each having a different LQID, to the first object based on the LQID value in each respective packet.

In some embodiments, the first object is associated with a virtual router (VR).

Some embodiments further include establishing the first LQID with the first object to be used for point-to-point data traffic, and establishing a second LQID with the first object to be used for shortcut data traffic.

In some embodiments, the network is configured in a ring topology.

Another aspect of the present invention provides a system for routing packets. This system includes a plurality of processors coupled to one another using a network, wherein each of the processors a unique processor identifier (PEID), wherein a first packet is routed into a first one of the processors across the network, wherein each such packet includes a PEID value corresponding to a PEID of one of the processors, and wherein the routing to the first processor is based on the PEID value in the first packet, a plurality of objects in the first processor, wherein each such object is assigned a logical queue identifier (LQID), wherein each packet also includes an LQID value corresponding to an LQID of one of the objects, and software for routing the first packet to the first object based on the LQID value in the first packet.

In some embodiments, a plurality of different LQIDs are simultaneously assigned to the first object.

In some embodiments, the means for routing includes means for routing a plurality of packets, each having a different LQID, to the first object based on the LQID value in each respective packet.

In some embodiments, the first object is associated with a virtual router (VR).

In some embodiments, the first LQID is associated with the first object to be used for point-to-point data traffic, and a second LQID is associated with the first object to be used for shortcut data traffic.

In some embodiments, the network is configured in a ring topology.

Still another aspect of the present invention provides a system for routing packets. This system includes a plurality of processors coupled to one another using a network, wherein each of the processors a unique processor identifier (PEID), wherein a first packet is routed into a first one of the processors across the network, wherein each such packet includes a PEID value corresponding to a PEID of one of the processors, and wherein the routing to the first processor is based on the PEID value in the first packet, and a plurality of objects in the first processor, wherein each such object is assigned a logical queue identifier (LQID), wherein each packet also includes an LQID value corresponding to an LQID of one of the objects, wherein the first packet is routed to the first object based on the LQID value in the first packet.

Some embodiments further include a services management system that provides changeable provisioning of processor capacity among a plurality of customers.

Some embodiments further include a services management system that provides firewall protection for each of a plurality of customers.

The network-based managed firewall service model creates a new source of revenue for service providers that is scalable, repeatable, and cost-effective. Leveraging centrally-managed services enables service providers to derive greater value from the existing basic access infrastructure. The network-based model eliminates expensive onsite installation and maintenance required of CPE-based solutions, and provides a foundation to deploy additional value-added services

US 8,250,357 B2

19                                                                    20

via the same delivery mechanism. Elimination of the CPE device also effectively hides the technology of the managed firewall solution from the customer, reducing internal network complexity and technical anxiety.

The CoSine Communications IP Service Delivery Platform 300 enables service providers to reap the benefits of deploying a network-based managed firewall service. The IPSX 9000 Service Processing Switch is a robust, high-availability platform that is capable of supporting hundreds of customer sites and network-based firewalls. The InVision Services Management System is capable of rapidly provisioning and managing thousands of managed firewall customers throughout an extensive nationwide network, enabling service providers to leverage volume security services driven by fewer staff resources. And the InGage™ Customer Network Management System empowers customer IT managers to view and augment managed network services. The IP Service Delivery Platform positions service providers to continuously deploy new value-added services to their customer base, maximizing revenues and creating customer lock-in.

Service providers utilizing the IP Service Delivery Platform 300 are to gain a significant competitive edge in deploying high-value IP-based services. The CoSine Communications solution enables services providers to save on the capital costs associated with deploying a managed firewall service over traditional CPE-based approaches. Additionally, the CoSine solution of the present invention virtually eliminates the steep operational "soft" costs that plague the CPE approach. Furthermore, as customer numbers and bandwidth requirements increase over time, so do the cost savings. This enables service providers to gain a cost-leadership position while greatly increasing revenues.

The IP Service Delivery Platform (IPSDP 300) is an ideal solution for service providers seeking to offer high value managed, network-based firewall services.

In some embodiments, a set of one or more management consultants to the networking industry help equipment vendors, service providers and enterprises make strategic decisions, mitigate risk and affect change through business and technology consulting engagements. This approach is tailored to each client's specific issues, objectives and budget.

These consultants are leaders in the networking industry and influence its direction though confidential engagements for industry leaders and through public appearances and trade magazine articles. These interactions assure clients that they will be among the first to know of the latest industry concepts and emerging technology trends.

Each consulting engagement is uniquely structured-no forced methodologies or canned reports are employed. An integrated client/management consultant case team respecting and soliciting the opinions of everyone is formed for each engagement.

The present invention provides a flexible, scalable hardware and software platform that allows a service provider to easily provide internet services, virtual private network services, firewall services, etc., to a plurality of customers. This solution can be changes to provision each customer with more or less processing power and storage, according to individual changing needs.

One aspect of the present invention provides a method of delivering security services. This method includes connecting a plurality of processors 930 in a ring configuration within a first processing system, establishing a secure connection between the processors in the ring configuration across an internet protocol (IP) connection to a second processing system to form a tunnel, and providing both router services and

host services for a customer using the plurality of processors in the ring configuration and using the second processing system.

In some embodiments, one or more processors In some embodiments, to support a communications network, the plurality of processors includes one or more control processors, one or more access processors, and one or more processing processors.

In some embodiments, for each of a plurality of customers, a virtual router 210 is formed in the first processing system 401 and is operably connected to a virtual router 210 formed in the second system 402.

In some embodiments, for each of a plurality of customers, a virtual private network 410 is formed using a virtual router 210 formed in the first processing system 401 and operably connected to a virtual router 210 formed in the second system 402.

In some embodiments, the connecting a plurality of processors in the ring configuration includes forming dual counter rotating ring connections 933 and 934, each connecting to each of the plurality of processors 930.

Another aspect of the present invention provides a system of delivering security services. This system 201 includes a plurality of processors 230 in a ring configuration within a first processing system 401, and means for establishing a secure connection 418 between the processors in the ring configuration 411 across an internet protocol (IP) connection to a second processing system 412 to form a tunnel, and for providing both router services and host services for a customer using the plurality of processors in the ring configuration 411 and using the second processing system 412.

In some embodiments, to support a communications network, the plurality of processors includes one or more control processors, one or more access processors, and one or more processing processors.

In some embodiments, for each of a plurality of customers, a virtual router is formed in the first processing system and is operably connected to a virtual router formed in the second system.

In some embodiments of this system, for each of a plurality of customers, a virtual private network is formed using a virtual router formed in the first processing system and operably connected to a virtual router formed in the second system.

In some embodiments of this system, the plurality of processors in the ring configuration includes dual counter rotating ring connections, each connecting to each of the plurality of processors.

Yet another aspect of the present invention provides a system 201 for delivering security services. This second system 201 includes a plurality of processors within a first processing system connected in a ring configuration, and a tunnel formed using a secure connection between the processors in the ring configuration across an internet protocol (IP) connection to a second processing system, wherein both router services and host services are provided for a customer using the plurality of processors in the ring configuration and using the second processing system.

In some embodiments of this second system, to support a communications network, the plurality of processors 930 includes one or more control processors 234, one or more access processors 238, and one or more processing processors 236. In some embodiments, one or more of these processors is packaged on a blade 239.

In some embodiments of this second system, for each of a plurality of customers, a virtual router 210 is formed in the

US 8,250,357 B2

21

first processing system **401** and is operably connected to a virtual router **210** formed in the second system **402**.

In some embodiments of this second system, for each of a plurality of customers, a virtual private network **410** is formed using a virtual router **210** formed in the first processing system **401** and operably connected to a virtual router **210** formed in the second system **410**.

In some embodiments of this second system, the plurality of processors **230** in the ring configuration includes dual counter rotating ring connections **932** and **933**, each connecting to each of the plurality of processors **930**.

Some embodiments of this second system further include a services management system **221** that provides changeable provisioning of processor capacity among a plurality of customers.

Some embodiments of this second system further include a services management system **221** that provides firewall protection for each of a plurality of customers.

Some embodiments of this second system further include a services management system **221** that provides provisioning of processor capacity among a plurality of customers, wherein each customer's resources are isolated from those of all the other customers.

Another aspect of the present invention provides a method of delivering security services, for example by forming a secure tunnel between a source site and a destination site. The method includes establishing a first routing node within a first processing system, establishing a second routing node within a second processing system, establishing a first internet protocol (IP) connection communications path between the first processing system and the second processing system that includes the first routing node and the second routing node, receiving a plurality of data packets into the first routing node, encrypting all of the received packets, without regard to any indication in the received packets, to form encrypted packets, sending the encrypted packets from the first routing node to the second routing node, receiving the encrypted packets into the second routing node, decrypting all of the received encrypted packets, without regard to any indication in the received encrypted packets, to form decrypted packets, and sending the decrypted packets from the second routing node to a destination in the second processing system.

In some embodiments, to support a communications network, the first processing system includes one or more control processors, one or more access processors, and one or more processing processors.

In some embodiments, for a first customer, a virtual router forms the first routing node in the first processing system and is operably connected to a virtual router that forms the second routing node in the second processing system.

In some embodiments, for each of a plurality of customers, a virtual private network is formed using a virtual encrypting router formed in the first processing system and operably connected to a virtual decrypting router formed in the second processing system.

In some embodiments, establishing the first routing node in the first processing system includes connecting a plurality of processors in a ring configuration.

In some embodiments, the connecting the plurality of processors comprises connecting the plurality of processors in a ring configuration, and wherein the connecting a plurality of processors in the ring configuration includes forming dual counter rotating ring connections, each connecting to each of the plurality of processors.

Yet another aspect of the present invention provides a system of delivering security services. This system includes a first processing system, a second processing system, and

22

means for establishing a secure connection between the processors across an internet protocol (IP) connection to a second processing system to form a tunnel, wherein the secure connection encrypts all packets going into the tunnel and decrypts all packets coming from the tunnel.

In some embodiments, to support a communications network, the first processing system includes one or more control processors, one or more access processors, and one or more processing processors.

In some embodiments, for each of a plurality of customers, a virtual router is formed in the first processing system and is operably connected to a virtual router formed in the second system.

In some embodiments, for each of a plurality of customers, a virtual private network is formed using an encrypting virtual router formed in the first processing system and operably connected to a decrypting virtual router formed in the second system.

In some embodiments, the one or more control processors, the one or more access processors, and the one or more processing processors are connected by dual counter-rotating ring connections, each connecting to each of the plurality of processors.

Still another aspect of the present invention provides a system **1500** of delivering security services, This system includes a first processing system **1510**, a second processing system **1520**, and a first routing node **1515** within the first processing system, and a second routing node **1525** within the second processing system, wherein the first routing node **1515** encrypts all packets routed to it and forwards encrypted packets to the second routing node **1525**, and the second routing node **1525** decrypts the encrypted packets sent from the first routing node and sends the decrypted packets from the second routing node to a destination **1402** in the second processing system **1520**.

In some embodiments of system **1500**, to support a communications network, the first processing system includes one or more control processors, one or more access processors, and one or more processing processors.

In some embodiments of system **1500**, for each of a plurality of customers, an encrypting virtual router **1511** is formed in the first processing system **1510** and is operably connected to a decrypting virtual router **1521** formed in the second processing system **1520**.

In some embodiments of system **1500**, for each of a plurality of customers, a virtual private network is formed using an encrypting virtual router formed in the first processing system and operably connected to a decrypting virtual router formed in the second system.

Some embodiments of system **1500** include one or more control processors, one or more access processors, and one or more processing processors connected in a ring configuration that includes dual counter rotating ring connections, each connecting to each of these plurality of processors.

Some embodiments further include a first virtual router in the first processing system that receives packets to be sent and routes such packets to the first routing node for encryption. Some embodiments further include a second virtual router in the second processing system that receives packets from the second routing node after decryption and routes such packets towards a destination.

It is understood that the above description is intended to be illustrative, and not restrictive. Many other embodiments will be apparent to those of skill in the art upon reviewing the above description. The scope of the invention should, there-

US 8,250,357 B2

23

24

fore, be determined with reference to the appended claims, along with the full scope of equivalents to which such claims are entitled.

What is claimed is:

1. A method of delivering security services through a service provider network, the method comprising:

establishing a first routing node within a first processing system;

establishing a second routing node within a second processing system;

establishing an internet protocol (IP) connection communications path between the first processing system and the second processing system that includes the first routing node and the second routing node, wherein establishing includes:

connecting the first routing node to a set of one or more service provider routers of a plurality of service provider routers within the service provider network; and

configuring one or more of the plurality of service provider routers to implement a virtual private network between the set of one or more service provider routers and the second routing node;

receiving a plurality of data packets into the first routing node;

forwarding the received plurality of data packets to a selected service provider router of the set of one or more service provider routers;

encrypting the received plurality of data packets to form encrypted packets within the selected service provider router, without regard to any indication regarding encryption in the received plurality of data packets;

sending the encrypted packets from the selected service provider router to the second routing node;

receiving the encrypted packets into the second routing node;

decrypting the received encrypted packets, without regard to any indication regarding decryption in the received encrypted packets, to form decrypted packets; and

sending the decrypted packets to a destination in the second processing system.

2. The method of claim 1, wherein, to support a communications network, the first processing system includes one or more control processors, one or more access processors, and one or more processing processors.

3. The method of claim 1, wherein for a first customer of the service provider, a first virtual router within the service provider network forms the first routing node in the first processing system and is operationally connected to a second virtual router within the service provider network, and the second virtual router forms the second routing node in the second processing system.

4. The method of claim 1, wherein for each of a plurality of customers of the service provider network, the virtual private network is formed using a virtual encrypting router formed in the service provider network and operationally connected to a virtual decrypting router formed in the second processing system.

5. The method of claim 1, wherein said connecting the first routing node to a set of one or more service provider routers within the service provider network includes connecting a plurality of processors in a ring configuration within the service provider network.

6. The method of claim 5, wherein said connecting the plurality of processors in the ring configuration includes forming a dual rotating ring architecture.

7. The method of claim 5, wherein said connecting the plurality of processors in the ring configuration includes forming a dual counter-rotating ring midplane.

*  *  *  *  *

# EXHIBIT R

US007116665B2

## (12) United States Patent
### Balay et al.

(10) Patent No.: **US 7,116,665 B2**
(45) Date of Patent: **Oct. 3, 2006**

(54) **METHODS AND SYSTEMS FOR A DISTRIBUTED PROVIDER EDGE**

(75) Inventors: **Rajesh Balay**, Sunnyvale, CA (US); **Vijay Srinivasan**, Palo Alto, CA (US); **Sanjeev Tyagi**, Santa Clara, CA (US); **Pasula Srinivasa Reddy**, Palo Alto, CA (US); **Chandramouli Sargor**, Sunnyvale, CA (US); **John Crawbuck**, Pleasanton, CA (US)

(73) Assignee: **Fortinet, Inc.**, Sunnyvale, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1088 days.

(21) Appl. No.: **10/163,073**

(22) Filed: **Jun. 4, 2002**

(65) **Prior Publication Data**

US 2003/0223406 A1     Dec. 4, 2003

(51) **Int. Cl.**
*H04L 12/56* (2006.01)
(52) **U.S. Cl.** ............... **370/392**; 370/395.31; 370/395.5
(58) **Field of Classification Search** ............... 370/392, 370/395.31, 395.5
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,938,095 B1 * | 8/2005 | Basturk et al. | ............. 709/238 |
| 6,999,454 B1 * | 2/2006 | Crump | ................. 370/389 |
| 2002/0126671 A1 * | 9/2002 | Ellis et al. | ................. 370/390 |
| 2003/0185226 A1 * | 10/2003 | Tang et al. | ................. 370/428 |
| 2005/0188106 A1 * | 8/2005 | Pirbhai et al. | ............. 709/238 |
| 2006/0140185 A1 * | 6/2006 | Norman et al. | ............. 370/389 |

* cited by examiner

*Primary Examiner*—Hassan Kizou
*Assistant Examiner*—Anthony Sol
(74) *Attorney, Agent, or Firm*—Hamilton & DeSanctis

(57) **ABSTRACT**

Methods and Systems are provided for a distributed Provider Edge (PE). A single Virtual Routing and Forwarding device (VRF) is associated with a single customer site. The VRF includes a single routing table (RIB) and a single forwarding table (FIB). The VRF also includes a plurality of Virtual Private Network (VPN) Protocol Instance Modules (VRP), where each VRP is associated with a different VPN from the customer site. Each VRP accesses the RIB directly and the FIB indirectly to acquiring addressing/routing information for a received data packet. Moreover, each VRP uses a data plane of the VRP to communicate the data packets to a PE backbone device. In turn, the PE backbone device uses the data plane to communicate with each of the VRPs, and the PE backbone device communicates with one or more tunnels.

**27 Claims, 4 Drawing Sheets**





Fig. 1



Fig. 2



Fig. 3



Fig. 4

US 7,116,665 B2

## 1

### METHODS AND SYSTEMS FOR A DISTRIBUTED PROVIDER EDGE

#### COPYRIGHT NOTICE/PERMISSION

A portion of the disclosure of this patent document contains material that is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure as it appears in the Patent and Trademark Office patent file or records, but otherwise reserves all copyright rights whatsoever. The following notice applies to the software descriptions/examples, and data as described below and in the drawings hereto: Copyright© 2002, Cosine Communications, Inc., All Rights Reserved.

#### FIELD OF THE INVENTION

The present invention is related to methods and systems for a distributed provider edge, more specifically methods and systems are provided to distribute and integrate provider edge technology.

#### BACKGROUND INFORMATION

In today's highly interconnected computing environments, a single customer can require a myriad of network configurations. For example, a customer can have internal networks called Intranets, external networks to other sites of the customer or to other organizations called Extranets, and the customer can have one or more Virtual Private Networks (VPNs). Each different VPN can be considered a separate network configuration. The customer can also have Internet network configurations to provide access to the World Wide Web (WWW).

Each network configuration (e.g., Intranet, Extranet, VPN, Internet, and others) will have its own data addressing scheme and policies that the customer must maintain and manage. As one of ordinary skill in the art readily appreciates this is not a trivial exercise. Moreover, often the customer may desire to have different network configuration interface with one another (e.g., an Extranet with an Intranet, and the like). This adds a layer of complexity in managing the customer's network configurations since the addressing schemes and policies between disparate network configurations are often not compatible with each other.

As a result, customers have turned to Service Providers (SPs) to manage and outsource the customers' networks. To do this, a customer's network site uses a customer edge device (CE). The CE can be any host computing device and/or a routing device for transferring network traffic from the customer's site to the SP. Network traffic occurs as data packets transmitted over a data link (e.g., Gigabit Ethernet (GigE), Frame Relay (FR), Time-Division Multiplexing (TDM), Asynchronous Transfer Mode (ATM), and others). The SP receives the data packets at a Provider Edge device (PE), which is another host computing device and/or routing device.

Typically, a customer will lease hardware from a SP, in order to manage the outsourced network configurations. The SP uses an Internet Protocol (IP) backbone to interface network traffic to the CE. Further, routing tables (RIBs) and forwarding tables (FIBs) are uniquely assigned to each of the customer's network configurations in order to effectively relay network traffic within the PE. Thus, the SP provisions separate routing devices for the customer to accommodate each of the customer's network configurations. As one of

## 2

ordinary skill in the art readily appreciates, this becomes expensive for a customer, especially as the number of network configurations increase at the customer's site.

To address these problems, the Internet Engineering Task Force (IETF) promulgated a standard referred to as Request for Comments (RFC) number 2547 (RFC2547). RFC2547 defines methods by which a SP with an IP backbone can more efficiently provide VPNs (e.g., network configurations) for its customers. RFC2547 uses Multiprotocol Label Switching (MPLS) and Border Gateway Protocol (BGP) for distributing routes of network traffic over the IP backbone. Each network configuration (e.g., VPN) occurring within the SP's PE includes a Virtual Routing and Forwarding Module (VRFM) that has its own unique RIB and FIB for acquiring routes and forwarding data packets. The disparate RIBs, between VRFMs, exchange routes using BGP. VRFMs enable a VPN exchange using BGP to provide VPN routing. Data between the VRFMs is transmitted as labeled packets over a backbone tunnel.

Yet, RFC2547 requires a single unique RIB and FIB for each VPN. Moreover, a VPN interface (e.g., VPN communication protocol originating from a VPN site) that is associated with a VPN exchange communicates with a single VRFM. Thus, in RFC2547, each additional VPN interface requires a different instantiation of a VRFM to handle the additional VPN interface. Thus, each VRFM can support only one VPN. Furthermore, RFC2547 does not address how a VPN site can be enabled to access the Internet. As is readily apparent to one of ordinary skill in the art, these limitations impact the scalability of the RFC2547 standard since the mapping between the RIBs, FIBs, and VPN interfaces are symmetric with the VRFMs. Moreover, the features of the VRFMs cannot be distributed to other devices within the SP's PE.

Therefore, there is a need for improving existing PE methods and systems, so that the features of the RFC2547 standard and other VPN provisioning models can be fully utilized in a scalable fashion with a distributed PE. Such improvements can permit a single CE to communicate with a single PE over a single CE to PE interface channel while using a variety of disparate VPN. With such improvements, the VPNs can intercommunicate, as desired by the customer, within the distributed PE over a single CE to PE interface channel.

#### SUMMARY OF THE INVENTION

According to one aspect of the present invention, a distributed Provider Edge (PE) system is provided. The PE system includes, a PE backbone device, a Virtual Routing and Forwarding device (VRF), and a plurality of Virtual Private Network (VPN) Routing and Protocol Modules (VRPs) residing on the VRF. The PE backbone includes a data plane, and the VRF is associated with a single customer site having a single routing table (RIB) and forwarding table (FIB). Each VRP communicates directly with the RIB and indirectly with the FIB. Moreover, each VRP communicates with the PE backbone device through the data plane and each VRP is associated with a single customer VPN.

According to another aspect of the present invention, a method to process network traffic on a distributed PE, comprising: The PE receives a first data packet, and the first data packet is associated with a first VPN transaction from a customer site. Also, the PE receives a second data packet, where the second data packet is associated with a second VPN transaction from the customer site. The first data packet is associated with a first VRP, and the first VRP

US 7,116,665 B2

3

resides on a VRF. Further, the second data packet is associated with a second VRP, where the second VRP resides on the VRF. The first VRP accesses a single RIB and FIB located on the VRF to acquire first addressing information for the first data packet. The second VRP accesses the RIB and FIB located on the VRF to acquire second addressing information for the second data packet. The VRPs use a data plane associated with the VRF to communicate the first and second data packets to a PE backbone device.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows a diagram of a distributed PE system, according to the present invention;

FIG. 2 shows another diagram of a distributed PE system, according to the present invention;

FIG. 3 shows still another diagram of a distributed PE system, according to the present invention; and

FIG. 4 shows a flow diagram of a method for processing network traffic on a distributed PE, according to the teachings of the present invention.

DESCRIPTION OF THE PREFERRED
EMBODIMENTS

In the following detailed description of various embodiments of the present invention, reference is made to the accompanying drawings that form a part hereof, and in which is shown by way of illustration specific embodiments in which the invention may be practiced. It is to be understood that other embodiments may be utilized and structural changes may be made without departing from the scope of the present invention.

Various embodiments of the present invention utilize some aspects of the RFC2547 standard and other VPN provisioning modules (e.g., Provider Provisioned VPN Framework (PPVPN-FRMWRK)). Moreover, BGP is used with various embodiments of the present invention to communicate imported and exported routes acquired from VPN Protocol Instance Modules (VRPs) (e.g., via the RIB) to PE backbone devices. The PE backbone devices access tunnels or Internet connections and communicate the routes to other PE systems or Internet routing devices for Internet traffic. Additionally, MPLS is used to relay data packets from FIBs to tunnels and vice versa (e.g., encapsulation). Of course it is readily apparent, that any standard, model, protocol, and/or combination of protocols can be used to achieve the teachings of the present disclosure. All such variations are intended to fall within the broad scope of the present invention.

VRPs are unique modules in the present invention that are associated with a single VPN site. They are not directly associated with a VPN interface (e.g., PE-CE links defined in RFC2547). Rather, a VPN interface is associated with a VRF. Multiple VRPs can reside in a single VRF and share the same RIB and FIB, thus enabling multiple VPNs for a VPN interface by making use of a single RIB and FIB at the PE. Conversely, RFC2547 does associate a single VPN with a single VRFM, and a VPN interface with a single VRFM, thereby restricting a VPN interface of a customer to participate in a single VPN. For a customer site to participate in multiple VPNs, RFC2547 requires multiple VRFMs and hence multiple RIBs and FIBs.

Moreover, the use of the word "device" in the present disclosure need not be a single physical device, since it will be readily apparent to one of ordinary skill in the art upon reading the present disclosure that a plurality of physical

4

devices can be logically associated as a single virtual device. Additionally, a "normalized interface" refers to a standard communication technique (e.g. Application Programming Libraries, link-layer protocols) used to communicate between a VRF and a PE backbone device of the present disclosure. The normalized interface can communicate control plane information (e.g. routes) directly to the PE backbone device and at the same time communicate data plane information (e.g., raw data packets) indirectly to the PE backbone device.

FIG. 1 illustrates a diagram of a distributed PE system 100, according to the present invention. The PE system 100 includes a Virtual Routing and Forwarding device 110 (VRF) having a plurality of VRPs (e.g., 111 and 112). Moreover, the VRF 110 includes a single RIB 112 and a single FIB 114. The PE system 100 also includes a PE backbone device 120 having an interface 121 and a Labeled Forwarding Table 122 (LFIB). The various components of the PE system 100 can be implemented on any computing device(s), such as a router(s), a switch(es), a virtual router(s), a host computing device(s), and others. For example, the PE system 100 can be implemented as any edge device(s) or components of any edge device(s) described in the IETF's Provider Provisioned VPNs Framework (e.g., PPVPN-FRMWRK). Moreover, the external interfaces/communication/protocols between the PE system 100 to a VPN site 130 (e.g., at CE 131) or to a backbone 140 (e.g., P systems/devices or PE systems/devices) can be the same as is defined by IETF standards. Therefore, the teachings of the present disclosure remain compliant with an IETF-based implementation.

A VRF 110 of the present disclosure is not restricted to a single VPN site 130. Multiple VPN sites (not shown in FIG. 1) can connect to a single VRF 110 as long as each of the VPN sites is participating in same VPN, this is consistent with IETF standards. Moreover, in the present disclosure multiple VPN sites 130 can connect to a single VRF 110 as long as the VPN site 130 is participating in one of the VPNs enabled by the VRF 110. In one embodiment of the present disclosure, the VRF 110 is associated with a single VPN site 130, the VPN site 130 includes a Customer Edge device 131 (CE) used to transfer and receive network traffic from the PE system 100. In one embodiment, the CE device 131 is a CE device defined by RFC2547. Moreover, the CE device 131 can be used to process all the VPNs occurring at the VPN site 130. Each VRP (e.g., 111 or 112) is associated with a single VPN from the VPN site 130.

Each VRP (e.g., 111 or 112) accesses the RIB 112 of the VRF 110 directly to update (e.g., import/export) routing information associated with a VPN. The VRP (e.g., 111 or 112) uses a control interface to a BGP module in order to relay (e.g., acquire/distribute) the routing information to/from other PE systems. The VRP (e.g., 111 or 112) provides the same functional interface to the BGP module as expected by it from the RIB 113 in RFC2547. The VRP (e.g., 111 or 112), by updating the RIB 113 or FIB 114, enables the VRF 110 to receive VPN data from the CE 131 or the PE backbone 120.

The PE backbone's interface 121 is used by each of the VRPs (e.g., 111 and 112). The interface 121 represents a control plane between the VRPs (e.g., 111 and 112) and the backbone 120. The interface 121 can be message based (e.g., asynchronous) or implemented as a functional Application Programming Interface (API) library accessible to both the PE backbone 120 and each of the VRPs (e.g., 111 and 112). The interface 121 can remain consistent with RFC2547 and other IETF standards.

US 7,116,665 B2

5     6

Additionally, a data plane interface 115 is used to relay raw data packets from the VRF 110 and the PE backbone 120. This data plane interface 115 can include an identifier with the relayed data packets that permit the Labeled FIB 122 of the PE backbone to determine which VPN the data packets are originating from. As one of ordinary skill in the art readily recognizes, the data plane 115 can enable accounting and other network services (e.g., policy-based services, Network Address Translation (NAT) services, firewall services, proxy services, and the like) for all VPN traffic occurring in the PE system 100 and distinguish between the various types of VPN traffic (e.g., determine which VPN requires traffic to have services and policies instituted).

Unlike RFC2547, with the present invention the PE backbone 120 acquires addressing/routing information using BGP indirectly from one of the VRPs (e.g., 111 or 112) and not directly from a RIB 113. Additionally, multiple VRPs (e.g., 111 and 112) are embodied on a single VRF 110 and use the same RIB 112 and FIB 114. This provides an integrated solution that permits a single VPN site 130 to use a single VRF 110 to participate in multiple VPNs. Moreover, VPN interfaces and PE to CE interfaces are associated with the VRF 110 and not the VRPs (e.g., 111 and 112). In fact, any routing protocol operational on the VRF 110 can interact with other protocols, including each of the VRPs (e.g., 111 and 112) indirectly through the RIB 112 by importing and exporting routes. Thus, a single protocol instance could be used to provide routing information to the VPN site 130 (e.g., at the CE 131) for all VPNs.

Traffic received from the CE 131 and PE system 100 interfaces is used to access the VRF's FIB 114. If the traffic is outbound traffic then routes are sent to the PE backbone 120 using the interface 121. And, the data packets are sent to the PE backbone 120 using data plane interface 115. The data packets are sent as labeled packets (label stacking can be used) to the backbone 120. Similarly, traffic received by the backbone 120 is sent to the VRF as IP packets (e.g., not labeled) over the interface 121 (e.g., routes) and data plane 115 (e.g., data packets). Data can be forwarded using the VRF's FIB 114 to the VPN site 130.

The LFIB 122 is used by the PE backbone 120 for forwarding VPN data packets received at the PE backbone 120. For outbound traffic, a labeled entry lookup is performed against the LFIB 122. The lookup results in the traffic being forwarded on backbone 140 using tunnel 141. The tunnel 141 provides a path to another PE system 100 and another PE backbone device 120. The traffic is sent via the tunnel 141 as labeled packets. For inbound traffic, the labeled entry lookup in the LFIB 122 results in forwarding the traffic to an appropriate VRF 110 as IP packets (e.g., not labeled). Additionally, in some embodiments of the present invention, a LFIB 122 does not reside on the PE backbone 120, rather, a combination FIB/LFIB can be implemented on the VRF 110, in this way the PE backbone 120 is not required to do any lookup on received data packets.

As one of ordinary skill in the art now appreciates, mapping of multiple VPNs to a single VRF 110 is asymmetrical and unique with the present invention. A control data plane 115 associated with a backbone 120 is used to communicate data packets between the VRF 110 and the backbone 120. Moreover, VPN interfaces and CE to PE interfaces are associated with the VRF 110 and not the VRPs (e.g., 111 and 112). Interactions between the VRPs (e.g., 111 and 112) are achieved through the single RIB 112.

FIG. 2 illustrates another diagram of a distributed PE system 200, according to the present invention. The PE system 200 includes a VRF 210 having a plurality of VRPs (e.g., 211 and 212). The VRF also includes a single RIB 212 and a single FIB 214. Moreover, the PE system 200 includes a backbone device 220 having a first data plane 215 and a second data plane 216, a LFIB 222, and in some embodiments a FIB 223. The PE system 200 can be implemented using a single computing device, a plurality of computing devices, or a plurality of components of computing devices. The PE system 200 can also be compliant with IETF standards.

The PE backbone device 220 is interfaced to backbone 240, which includes a first tunnel 241 and a second tunnel 242. In some embodiments, backbone 240 also includes an Internet tunnel 243. Although, as one skilled in the art recognizes, the Internet tunnel is actually just an Internet connection, since data packets do not need to be labeled with Internet traffic. In this way, a PE system 220 can be used in some embodiments, within the PE backbone 220. The tunnels (e.g., 241–243) can be MPLS Labeled Switched Paths (LSPs), IP-Sec, or any other tunnel capable of carrying labeled packets.

Direct or indirect mapping of VPN routes can be used to route packets to one of the tunnels (e.g., 241–243). If indirect mapping is used, then a LFIB 222 lookup (e.g., swap or transform) is required for outbound VPN traffic.

The VRPs (e.g., 211 and 212) reside on the VRF 210; each VRP (e.g., 211 or 212) represents a separate VPN occurring within the VRF 210. Moreover, the VRF 210 communicates with a VPN site 230 having a CE device 231. The VRF uses a plurality of interfaces associated with the different VPNs and the CE to PE communications to interact with the CE 231.

Each of the VRPs (e.g., 211 and 212) has access to the first 215 and second data planes 216. Each data plane (e.g., 215 and 216) corresponds to data packets associated with a different type of VPN or Internet traffic. The VRPs (e.g., 211 and 212) communicate directly with the RIB 212 and indirectly with the FIB 214 to selectively determine which data plane (e.g., first 215 or second 216) to use when communicating with the PE backbone device 220. Control information (e.g., routes) is sent by the VRPs (e.g., 211 and 212) to the PE backbone's control interface 221.

In one embodiment, the first tunnel 241 is a first VPN and the second tunnel 242 is a second VPN. Moreover, in some embodiments, the first tunnel can be represented as an Internet connection 243 (e.g. destined for an Internet routing device on the Internet), and the second tunnel 242 is a VPN tunnel. Furthermore, in one embodiment, the first tunnel 241 is an Intranet tunnel and the second tunnel 242 is an Extranet tunnel. Of course a variety of tunnel communications can also be used with the present disclosure. All such tunnel combinations are included within the broad scope of the present invention. Moreover, each tunnel (e.g., 241–243) can have different services enabled or associated with them. For example, the Internet connection/tunnel 243 can include NAT services, firewall services, proxy services, and the like. In this way, the VRF 210 can detect the data plane (e.g., 215 or 216) and force the appropriate services or polices required for the received data packets. Additionally, if Internet and VPN traffic are using the same services and policies then a data plane 216 can be used to communicate between the PE backbone device 220 and the VRF 210.

As one of ordinary skill in the art now appreciates, various embodiments of PE system 200 can permit a single instance of a VRF 210 to support multiple disparate VPNs through the use of instances of different VRPs (e.g., 211 and 212) enabled on the single VRF 210. Moreover, secure Extranet and Intranet communications can be achieved for a single

US 7,116,665 B2

7

PE system 200 using multiple data planes (e.g., 215 and 216) between the VRPs (e.g., 211 and 212) and the PE backbone device 220 to select the appropriate tunnel (e.g., 241, 242, or 243). Further, a single VRF 210 can support both VPN traffic as well as Internet traffic. The flexible approach of PE system 100 also permits modifications (e.g., new instances of VRPs (e.g., 211 and 212) or new developed control planes, using new identifiers for the data packets) to be installed more easily into the PE system 200 when additional tunnels and networks are created/needed in the future.

FIG. 3 illustrates still another diagram of a distributed PE system 300, according to the present invention. The PE system 100 includes a VRF 310 having a first VRP 311 and a second VRP 312. The VRF 310 also includes a single RIB 312 and a single FIB 314. Furthermore, PE system 100 includes a first PE backbone device 320 associated with a first SP, and a second PE backbone device 330 associated with a second SP. The PE system 100 can be implemented and distributed across one or a plurality of computing devices, or on a plurality of components of computing devices. The PE system 100 can be virtual, physical, or a combination of both virtual and physical. Moreover, the PE system 100 can be compliant with IETF standards.

The PE backbone devices (e.g., 320 and 330) communicate with a backbone 350 having a first tunnel 351 and a second tunnel 352. The first PE backbone 320 uses the first tunnel 351 to communicate with the first SP. Similarly, the second PE backbone 330 uses the second tunnel 352 to communicate with the second SP.

The VRF 310 uses a plurality of VPN interfaces and CE to PE interfaces to communicate with a VPN Site 360 having a CE 360. The first VRP 311 is designed to directly access the RIB 312 to acquire route information associated with the first SP. This information is passed along to the first backbone 320 by using interface 321. Moreover, the data packets are relayed to the first PE backbone 320 using a first data plane 315 with an identifier. The identifier is then used to lookup forwarding information in a LFIB 322. A determination is made that the data packets need to be relayed via the first tunnel 351 associated with the first SP.

The second VRP 312 is designed to directly access the RIB 312 to acquire route information associated with the second SP. This information is passed along to the second backbone 330 by using interface 321, Moreover, the data packets are relayed to the second PE backbone 330 using a second data plane 316 with an identifier. The identifier is then used to lookup forwarding information in a LFIB 332. A determination is made that the data packets need to be relayed via the second tunnel 352 associated with the second SP.

In some embodiments of PE system 300, the tunnels (e.g., 351 and 352) communicate with additional PE systems 300 having additional backbones (e.g., 320 and/or 330). Moreover, outbound traffic destined for one of the tunnels (e.g., 351 or 352) is sent as labeled data packets. Inbound traffic received by one of the backbones (e.g., 320 or 330) is forwarded to the VRPs (e.g., 311 and 312) as IP data packets. Additionally, in some embodiments, the backbones (e.g., 320 and 330) and the VRF 310 are enabled with BGP for importing and exporting routes from the RIB 312 directly and indirectly from the FIB 314.

PE system 300 permits a single VRF 310 associated with a CE 361 to handle network traffic associated with multiple SPs. This permits a single VPN customer the opportunity to use multiple SP backbone providers. Thus, a single customer site can allow multiple participants into a VPN, where the multiple participants each use a different SP to connect and

8

communicate with the VPN. Additionally, this functionality cannot be provided with RFC2547.

FIG. 4 illustrates a flow diagram of one method 400 for processing network traffic on a distributed PE, according to the teachings of the present invention. Initially, in 410, a first data packet is received at a PE device. The first data packet is associated with a first VPN transaction from a customer site. Concurrently, in 412, a second data packet is received at the PE device. The second data packet is associated with a second VPN transaction from the customer site.

In 420, the first data packet is associated with a first VRP. The first VRP resides on a VRF. The VRF interfaces with a CE at the customer site. Moreover, in 430, the first VRP acquires first addressing/routing information about the first data packet through a single RIB residing on the VRF. Also, the RIB indirectly provides the first VRP with information from a single FIB also residing on the VRF.

In 422, the second data packet is associated with a second VRP. The second VRP also resides with the first VRP on the VRF. Similarly, in 432, the second VRP acquires second addressing/routing information about the second data packet through the RIB directly and the FIB indirectly (e.g., through the RIB). In some embodiments, the first and second addressing/routing information is acquired by the VRPs by using BGP on the VRF to import and export routing information.

Both VRPs, in 440, use a single data plane associated with the VRF and a backbone device to communicate the first and second data packets from the VRF to the PE backbone device. Additionally, the PE backbone device can receive backbone data packets from one or more tunnels interfaced to the PE backbone device. In one embodiment, these backbone data packets are then located in the PE backbone's LFIB and relayed to either the first VRP of the second VRP via the control data plane.

In one embodiment, the association between the data packets and the appropriate VRP is asymmetric and unique. Moreover, in some embodiments, one or more additional data planes between the VRF and the backbone is provided, where each of the one or more additional data planes are associated with a different type of VPN. Some types of VPNs can include Extranets, Intranets, custom created VPNs, and the others. Additionally, a normalized Internet access data plane can be provided between the VRF and the backbone to permit Internet traffic with the VPN traffic to be sent via an Internet connection as a non-labeled data packet.

CONCLUSION

Methods and systems detailed provide a distributed PE. These methods and systems create permit the distribution of processing and workload of Virtual Routing and Forwarding to multiple devices by introducing a data plane between a VRF and a PE backbone device. The VRF includes a single RIB and FIB, but includes multiple instances of VRPs. Each VRP accesses the RIB and the FIB and communicates routing information via a control plane to the PE backbone device and data packets via the data plane to the PE backbone device.

Furthermore, multiple data planes can be instituted to permit integration of disparate networks over the VRF. For example, a data plane can be used for Internet communications, Intranet communications, and/or Extranet communications. In this way, a single VRF instituting a plurality of VRP instances can use a set of data planes to interface with

US 7,116,665 B2

9

a PE backbone device. The PE backbone device can then use a plurality of tunnels to communicate with additional PE systems or the Internet.

Moreover, a single VRF can be interfaced to two separate PE backbone devices using disparate SPs. This is achieved by having a single VRP instance for each PE backbone device within the VRF. The appropriate VRP uses the VRF's RIB to identify data packets associated with a particular SP. The VRPs then use data planes from the VRF to the appropriate PE backbone device in order to transfer the data packets. The PE backbone device then uses the appropriate SP's tunnel to communicate with the appropriate SP.

Although specific embodiments have been illustrated and described herein, it will be appreciated by one of ordinary skill in the art that any arrangement that is calculated to achieve the same purpose may be substituted for the specific embodiments shown. This application is intended to cover any adaptations or variations of the present invention. Therefore, it is intended that this invention be limited only by the claims and the equivalents thereof.

What is claimed is:

1. A distributed Provider Edge (PE) system, comprising:
a PE backbone device having a data plane;
a Virtual Routing and Forwarding device (VRF) associated with a single customer site and having a single routing table and forwarding table;
a plurality of Virtual Private Network (VPN) Routing and Protocol Modules (VRPs) residing on the VRF, each VRP communicates directly with the routing table and indirectly with the forwarding table; and
wherein each VRP communicates with the PE backbone device through the data plane and each VRP is associated with a single customer VPN.

2. The PE system of claim 1, wherein a plurality of VPN interfaces is associated with the VRF.

3. The PE system of claim 1, wherein a plurality of VPN traffic communicating with the VRF use the single forwarding table.

4. The PE system of claim 1, wherein each VRP communicates with the single routing table by importing and exporting routes from the single routing table.

5. The PE system of claim 1, wherein the single forwarding table is used to forward traffic received by the VRF to the PE backbone device as labeled packets.

6. The PE system of claim 1, wherein the PE backbone device communicates via a tunnel to one or more additional PE backbones or an Internet router device for an Internet connection.

7. The PE system of claim 6, wherein the PE backbone forwards inbound traffic received from one or more of the additional PE backbones as Internet Protocol (IP) packets to one or more of the VRPs.

8. A distributed provider edge (PE) system, comprising:
a PE backbone device that transmits data packets via a first tunnel and a second tunnel;
a plurality of VPN Protocol Instance modules (VRPs) residing on a single Virtual Routing and Forwarding device (VRF), the VRF includes a routing table and a forwarding table, and the VRF is associated with a plurality of VPNs from a single customer site and each VRP is associated with one of the plurality of VPNs;
a first data plane used by a number of the VRPs and the PE backbone device to communicate via the first tunnel;
a second data plane used by a number of the VRPs and the backbone device to communicate via the second tunnel; and

10

wherein the VRPs communicate directly with the routing table and indirectly with the forwarding table and selectively uses one of the data planes to communicate the data packets associated with the plurality of VPNs to the PE backbone device.

9. The PE system of claim 8, wherein the first tunnel is an Internet connection to an Internet router device and the second tunnel is a VPN tunnel.

10. The PE system of claim 8, wherein the first tunnel is first VPN tunnel and the second tunnel is a second VPN tunnel.

11. The PE system of claim 8, wherein the first tunnel is an Intranet tunnel and the second tunnel is an Extranet tunnel.

12. The PE system of claim 8, wherein different services are enabled for the data packets based on the selected data plane.

13. The PE system of claim 12, wherein the different services include at least one of a Network Address Translation (NAT) service and a firewall service.

14. A distributed Provider Edge (PE) system, comprising:
a first PE backbone device associated with a first service provider (SP);
a second PE backbone device associated with a second SP;
a Virtual Routing and Forwarding device (VRF) associated with a plurality of Virtual Private Networks (VPNs) from a single customer site, the VRF includes a single routing table and forwarding table;
a first VPN Protocol Instance module (VRP) residing on the VRF used to communicate with the first SP through the first PE backbone device;
a second VRP residing on the VRF used to communicate with the second SP through the second PE backbone device; and
wherein the VRPs use the routing and forwarding tables to communicate traffic from the plurality of VPNs to the PE backbones.

15. The PE system of claim 14, wherein each VRP uses a different data plane associated with the VRF to communicate data packets to the PE backbones.

16. The PE system of claim 14, wherein the PE backbones communicate the traffic via tunnels to one or more additional PE backbones.

17. The PE system of claim 16, wherein the traffic is outbound traffic destined for one of the tunnels and forwarded to the PE backbones as labeled data packets.

18. The PE system of claim 16, wherein inbound traffic is received from the PE backbones through one of the tunnels and forwarded to the VRPs as Internet Protocol (IP) data packets via one of the data planes.

19. The PE system of claim 14, wherein the PE backbones and the VRF are enabled with Border Gateway Protocol (BGP).

20. The PE system of claim 14, wherein the PE backbones and the VRF are virtual devices.

21. A method to process network traffic on a distributed Provider Edge (PE), comprising:
receiving a first data packet at a PE, wherein the first data packet is associated with a first Virtual Private Network (VPN) transaction from a customer site;
receiving a second data packet at the PE, wherein the second data packet is associated with a second VPN transaction from the customer site;

US 7,116,665 B2

**11**

associating the first data packet with a first VPN Protocol Instance module (VRP), wherein the first VRP resides on a Virtual Routing and Forwarding device (VRF);

associating the second data packet with a second VRP, wherein the second VRP resides on the VRF;

accessing a single routing table and forwarding table located on the VRF to acquire first addressing information for the first data packet, wherein the tables are accessed by the first VRP;

accessing the tables located on the VRF to acquire second addressing information for the second data packet, wherein the tables are accessed by the second VRP; and

using a data plane associated with the VRF to communicate the first and second data packets to a PE backbone device, wherein the first VRP and the second VRP use the data plane.

22. The method of claim 21 further comprising receiving PE backbone data packets that are relayed to the first VRP or the second VRP, wherein the PE backbone device receives the PE backbone data packets from a tunnel and uses the data plane to communicate the PE backbone data packets to the first VRP or the second VRP.

**12**

23. The method of claim 21, wherein in accessing the tables, the VRF uses Border Gateway Protocol to import and export the routing information from the routing table to the VRPs.

24. The method of claim 21, wherein in associating the data packets, the association between the data packets to the appropriate VRPs is asymmetric and unique.

25. The method of claim 21 further comprising providing one or more additional data planes for use by the VRPs and the PE backbone device, wherein each of the one or more additional data planes is associated with a different type of VPN.

26. The method of claim 25, wherein in providing, the types of VPNs include at least one of an Extranet and an Intranet.

27. The method of claim 21 further comprising providing an Internet data plane for use by the VRPs and the PE backbone device.

* * * * *